# State, *ex rel.* Clarke, *v.* Carter.

## *Quo Warranto.*

(Decided June 29, 1911. Rehearing denied Dec. 21, 1911.
56 South. 974.)

1. *Statutes; Enactment; Local Laws; Notice.*—The journals of the legislature showing the passage of a local law need not, under section 106, Constitution 1901, show affirmatively that the notice had been published without expense to the state, but are required to show only that the statute was passed in accordance with the Constitution.

2. *Same.*—An affidavit of publication of notice of intention to apply for the passage of a local law reciting that the notice was published in a named newspaper once a week for four consecutive weeks, ending March 20, 1910, shows that the publication was had during a period of four consecutive weeks, and is sufficient to justify the passage of the local law, the bill for which was introduced on March 22, 1910.

3. *Same; Invalid in Part; Effect.*—Where the valid provisions of an act can be given effect, they will be allowed to stand unless the court is unable to say that the legislature would have passed the act without the void provision, and the invalid portions of Local Acts 1911, p. 274, does not render the balance of the act invalid, especially in view of the provisions therein that the valid provisions shall not be affected by the invalid provisions.

4. *Same.*—Where a statute declares that any void provision thereof shall not affect the other provisions, it is not unconstitutional as a whole, on the ground that the title was insufficient to authorize certain provisions contained in the body of the act; the effect being that such provisions must fail without rendering inoperative the other provisions.

5. *Same; Title; Sufficiency.*—The title of Acts 1911, p. 274, is sufficient to support provisions in the body of the act abolishing justice courts, and creating an inferior court.

6. *Same; Plurality of Subjects.*—The title of Acts 1911, p. 274, does not contain two subjects, but conforms to the essential requirement of section 45, Constitution 1910.

7. *Evidence; Judicial Notice; Statutes.*—The courts take judicial notice of the fact that there is no law whereby the state may pay for the publication of a notice of an application to apply for the passage of a local law, and the journals of the legislature showing that a local law was passed in accordance with section 106, Constitution 1901, affirmatively shows that the notice was given and publication made without expense to the state.

8. *Courts; Establishment; Legislative Power.*—Though it be assumed that the Constitution prohibits the establishment of two courts of inferior jurisdiction, and the fact that two courts invested with

[State, ex rel. Clarke v. Carter.]

jurisdiction of the justice court have been created for Mobile County, does not render Local Acts 1911, p. 274, violative of section 168, Constitution 1901.

9. *Same; Inferior Courts; Municipal Courts.*—Local Acts 1911, p. 274, gives to parties the right of appeal from judgment of the court under the conditions governing appeal from justice courts, and hence, preserves the right of appeal.

10. *Constitutional Law; Statutes; Validity.*—The courts always presume that a statute is constitutional and will give it such a construction as will render it valid.

11. *Same; Construction.*—Where a particular construction of a constitutional provision has been generally accepted as correct, and such construction has occurred contemporaneously with the adoption of the constitution or under a constitution preceding it, and by those who had an opportunity to understand the intention of the constitution, a strong presumption arises that the construction rightly interprets the intention of the framers of the constitution.

12. *Officers; Holding Two at Once; Statutes.*—Local Acts 1911, p. 274, is not violative of section 280, Constitution 1901, because conferring the jurisdiction of justices of the peace upon the judge of the inferior criminal court of Mobile County, established by Acts 1898-9, p. 1164, since the act does not create an additional office, but merely provides the performance of duties pertaining to the two courts by the judge of the court already established, and since the constitution does not prohibit the consolidation of two or more offices, nor forbid the legislature from imposing additional duties on existing officers, the provision is unobjectionable.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Quo Warranto by the state on the relation of N. R. Clarke against John E. Carter, requiring him to show by what authority he is claiming the right to exercise the functions and authorities of a justice of the peace. From a judgment dismissing the petition relator appeals. Reversed and rendered.

STEVENS & LYONS, for appellant. The journal sufficiently shows that the bill was referred to a standing committee as required by section 62 of the Constitution. —*Walker v. Montgomery,* 139 Ala. 479. The journals sufficiently show a compliance with section 106 of the Constitution.—*City of Ensley v. Simpson,* 166 Ala. 381. The conferring of jurisdiction upon or creation of two

inferior courts as done by the act in question was in no way violative of section 168 of the Constitution.—*Cocciola v. Wood-Dickerson*, 130 Ala. 532; *Moore v. The State*, 68 Ala. 360; *Balkum v. The State*, 40 Ala. 671; *Randolph v. Baldwin*, 41 Ala. 305.  By conferring jurisdiction upon the judge of the inferior court or naming him as the ex officio judge of the court, did not render the act violative of section 280.—Authorities next above, and 6 W. Va. 577; 5 Gratt. 518; 13 Ill. 370.  The accepted construction of a constitutional provision goes into its readoption, and is persuasive that such was the intention of the makers of the constitution.—Cooley's Const. Lim. 102, et. seq.: 6 W. Va. 562.  There is no prohibition against an increase by the legislature of the compensation of a judge during his term of office.—*White v. Denson*, 123 Ala. 583.  The act does not offend section 45 of the Constitution.—*Ex parte Mayor, etc., of Birmingham*, 116 Ala. 186; *Mitchell v. State, ex rel,.* 134 Ala. 392; *Jackson·v. The State*, 136 Ala. 99.  The void portions of an act may be eliminated, and the valid portions given effect, the void portions will not be permitted to affect the valid portions.—*Harper v. The State*, 109 Ala. 32; *Sheehan v. Bailey*, 110 Ala. 308; *State v. Davis*, 130 Ala. 150.  This is especially true in view of the provisions of this act, that the void provisions should not affect the valid provisions thereof.  Portions of the title not supported by the body of the act will be rejected as surplusage, and the act allowed to stand.—*State, ex rel. Porter v. Crook*, 126 Ala. 115.  It is a matter of judicial knowledge as to where the precincts of a county are situated.—*Guarreno v. The State*, 157 Ala. 20; *Russell v. Huntsville*, 137 Ala. 631.  The term, practice, proceeding, or procedure, includes appeals, and hence, the right of appeal is preserved by the act.—6 Words & Phrases, 5631, et seq.: 91 Ill. 320; 3

Neb. 121; 99 Ind. 351; 107 U. S. 232. Unconstitutionality must appear beyond a reasonable doubt.—*Myer v. Green,* 154 Ala. 254; *Jordan v. McClure L. Co.,* 54 South. 425. That construction will be given an act, which upholds its constitutionality.—*Jefferson v. City of Bessemer,* 87 Ala. 242; *Ballentine v. Wickersham,* 75 Ala. 533. The questions raised by the demurrer being those discussed above, it appears that the court was in error in sustaining the demurrers to the petition.

INGE & McCORVEY, for appellee. The courts take judicial notice of local acts.—*Davis v. The State,* 141 Ala. 84; *Badgett v. The State,* 157 Ala. 20. If the act is unconstitutional in any particular, the grounds of demurrer here interposed will be sufficient to raise the question.—*Montgomery v. Birdsong,* 126 Ala. 632; *Shell Road v. O'Donnell,* 87 Ala. 376. The act was not passed in conformity with section 106 of the Constitution, the courts take judicial notice of the journals kept by the two houses.—*Moog v. Randolph,* 77 Ala. 597; *Moody v. The State,* 48 Ala. 115. The affidavit should have contained a statement that publication was made without cost to the state.—*Ensley v. City,* 166 Ala. 366. Publication of a legal notice in a Sunday newspaper is void.—37 Cyc. 587; 17 Enc. P. & P. 102, and cases there cited. It affirmatively appears that only twenty-three days notice was given, while the statute requires twenty-eight days.—56 Ind. 253; 33 L. R. A. 532; 16 How. 610. Counsel discuss the provisions of section 168 of the Constitution, and insist that the act is violative of said section, but cite no authority in support thereof. They insist that the act contained a double subject because creating an inferior court, and another abolishing the justices of the peace.—*Ballentine v. Wickersham,* 75 Ala. 533; *Lee v. The State,* 143 Ala. 93. They also

insist that the matters contained in section 17 of the act are not clearly expressed in the title.—*City of Mobile v. L. & N.*, 124 Ala. 132; *Mobile D. D. Co. v. Mobile,* 146 Ala. 198. The act is violative of section 280 of the Constitution.—21 La. Ann. 138; 43 Tex. 41. The act violates section 281. The right of appeal is denied.— *B'ham v. So. Ex. Co.*, 164 Ala. 529; *Hand v. Stapleton,* 135 Ala. 156. The application for rehearing is based on the proposition that the act offends section 280 of the Constitution, and the authorities cited in the original brief are relied on.

MAYFIELD, J.—This is a quo warranto proceeding, instituted in the name of the state on the relation of N. R. Clarke, against John E. Carter, seeking that he be required to show by what authority, if any, he is claiming the right to exercise the functions and authority of justice of the peace in and for precinct No. 7 of Mobile county, and that he be restrained from further exercising said functions and powers. The respondent demurred to the petition or complaint, and assigned numerous grounds therefor. The trial court sustained the respondent's demurrer and dismissed the proceeding, and from that judgment the relator prosecutes this appeal.

The petition, among other things, alleged that the office of justice of the peace, the functions and powers of which respondent was attempting to exercise, had been abolished by a local act of the Legislature, entitled, "An act to establish an inferior civil court in lieu of justices of the peace, for all precincts lying within or partly within the city of Mobile."—Local Acts 1911, p. 274. It is conceded by respondent, appellee here, that, if this act was passed in conformity with the provisions of the state and federal Constitutions, the re-

spondent has no right to exercise the functions and powers which he is alleged to be now exercising, and that he should be ousted from the office or prohibited from exercising such authority; but it is contended, on the other hand, that if such act was not constitutionally enacted, or would not have the effect to abolish the office of justice of the peace, then the respondent has the right to continue in said office, and the trial court properly sustained his demurrer to the petition or complaint.

Upon this state of the record, it is necessary on this appeal only to determine whether or not this local statute in question was constitutionally enacted, and whether or not it had the effect to abolish the office which the respondent claims to hold, and the duties and powers of which he claims to be entitled to perform and exercise.

It is insisted by the respondent that this act is unconstitutional, void, and of no effect for several reasons. The first point of contention is that the act, being a local one, was not passed in conformity with the provisions of section 106 of the Constitution, in that the journals of the House and the Senate do not affirmatively show that the notice provided in said section was published "without cost to the state."

It is conceded that there was an attempt to comply with this provision of the Constitution, and that the notice was given and published, but it is claimed that the journals do not show affirmatively that it was so published "without cost to the state," and that such journals do not show that it was published for the length of time required by the Constitution. It is not necessary that the journals should show affirmatively that it was published without expense to the state. The Constitution directs only that the journals must affirmatively show that the bill was passed in accordance with the provisions of this section.

Moreover, the court judicially knows that there was no law whereby the state could have been required to incur the expense of paying for this notice; and the journal therefore does affirmatively show that the notice was given and the publication had without any expense to the state. The only possible effect of this provision, "without cost to the state," is to prevent the Legislature from authorizing or attempting to authorize the state to incur the expense of such publications.

As to the length of time during which the notice was published, the affidavit of publication recites that it was "published in a newspaper once a week for four consecutive weeks, ending March 20, 1911." This certainly conformed to the constitutional requirement as to the length of time. The only reasonable construction which could be given this language is that the period of four consecutive weeks during which said publication was had ended March 20, 1911, and the bill was introduced in the Legislature two days thereafter. This construction is fully supported and sustained by the opinion in the case of *Ensley v. Simpson,* 166 Ala. 381, 52 South. 61.

It is next insisted that the act violates section 168 of the Constitution, in that it creates two inferior courts in lieu of the justices' courts of the city of Mobile, whereas the Constitution authorizes the creation of only one. There is certainly no merit in this contention. In the first place, this act does not create, nor attempt to create, two courts; nor does the fact that other courts have been created for Mobile county and invested with the jurisdiction of justices' courts render this act void.

Moreover, there is no reason why the Legislature could not establish two courts of inferior jurisdiction in lieu of the justice courts, if it could establish one. One court might be inadequate to properly and prompt-

ly administer the law, and, if two should be required, we see no constitutional objection to the Legislature's creating two. It was evidently the purpose of the constitutional convention to leave it to the discretion of the Legislature as to whether it would establish inferior courts in lieu of justice courts.

It is unnecessary for us to pass upon the question, whether that part of the act authorizing the judge of the inferior criminal court of Mobile to act as ex officio judge of the inferior civil court, and giving him compensation for his services violates the constitutional provision against one person's holding two offices of profit and trust, or that which provides that the compensation and fees of officers shall not.be increased during the term for which they were elected for the reason that, if such provisions were invalid, the infirmity would not strike down the whole act, nor prevent the abolition of the office of justice of the peace for Mobile county, if the act in question was constitutionally enacted, and did create an inferior court, though the provisions as to the appointment or election of the judge thereof might be inoperative and inefficacious.

In other words, this part of the act, standing alone, would neither add to nor subtract from the power of exercising the functions of his alleged office. Because one section or one provision of an act may be unconstitutional and void does not necessarily render the entire statute or enactment void. If the act can be given operation and effect without such void provision, the valid portions of it will be allowed to stand, unless the court is unable to say or to know that the Legislature would have passed the act without the void provision; but the court is relieved of any doubt as to this matter by section 18 of the act in question, which expressly provides that, if any provision of the act shall be held void, it

shall not affect any other section or provision of the act. —*Harper v. State,* 109 Ala. 32, 19 South. 857; *State v. Davis,* 130 Ala. 150, 30 South. 344, 89 Am. St. Rep. 23; *Shehane v. Bailey,* 110 Ala. 308, 20 South. 359.

This is likewise true as to other objections urged against the constitutionality of the act, upon the ground that the title was not sufficiently broad to authorize certain provisions contained in the body of it. If such provision should fail, it would not strike down nor render inoperative the entire statute, nor prevent the abolition of the office of justice of the peace. These objections go only to parts of the statute which can neither add to nor subtract from the rights, duties, and functions of the respondent. If, however, we could consider these questions, we are not prepared to say that it is sufficiently made to appear by this record that the enacting parts of this bill as to the extent of the territorial jurisdiction are not embraced in the title of the act, and such parts are certainly germane and cognate to the title.

There is one singular provision in the act contained in section 13 which expressly authorizes the defendant to appeal from the judgments in such court—the statute containing no like express provision with respect to the plaintiff. It is unnecessary, however, on this appeal, for the court to further discuss this question, for the reason that section 3 of the act provides that the general laws of this state regulating the practice and proceedings of courts of justices of the peace shall be applicable to the said inferior criminal courts. These terms, we think, are sufficiently broad to include the right of appeal from judgments of this court under the same provisions and conditions as for appeals from justices' courts.

Indulging the presumption in favor of the constitutionality of the statute, which we are required to do, we are not willing to condemn the entire statute because of this irregularity or defect, but, on the other hand, will give it that construction which will uphold its constitutionality; that is, that section 3 of the act preserves the right to appeal from the judgments of such court.

The act contains a number of other irregularities, and shows upon its face that it was not drawn with the care and precision which should be given acts of this kind; yet we find no valid reason which would justify us in striking down this entire statute, and declaring it abortive for all purposes. There are a great number of defects as to provisions of sections 13 and 17 of the act, the one going to the right of appeal, and the other to the extent of territorial jurisdiction; but we do not think that any of these defects complained of, and which can be raised by these parties on this appeal, are sufficient to render the entire act void.

It is also contended that the act is in violation of section 45 of the Constitution, in that the title contains two subjects. We cannot give our assent to this contention. The title of the act is as follows: "To establish an inferior court in lieu of justices of the peace for all precincts lying within or partly within the city of Mobile." This title is clearly in conformity with, and not in violation of, section 45 of the Constitution. While the bill does create an inferior court, and does abolish the justices' courts, yet the declared object and purpose is to establish the one in lieu of the other, which the Constitution expressly authorizes, and which, therefore, constitutes but one subject, which is clearly expressed in the title.

Finding no objection to this act, nor to any part of it which would render the whole unconstitutional and

void, or which would prevent the accomplishing of its declared end of establishing an inferior court in lieu of justice courts, we are unable to affirm the judgment of the lower court in sustaining the demurrer to the petition or complaint and dismissing the proceedings. It is conceded by counsel for appellee in this case that, if the act in question was passed in conformity with the Constitution, the respondent has no right to, and should be ousted from, the office of justice of the peace.

The judgment of the lower court, therefore, is reversed; and a judgment will be here rendered, preventing and restraining the said John E. Carter from further exercising or attempting to exercise the functions and powers of the office of justice of the peace in precinct 7 for Mobile county.

Reversed and rendered.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.

### On Application for Rehearing.

PER CURIAM.—The only proposition insisted upon as ground for a rehearing is well stated by counsel for the applicant, as follows: "The act in question is unconstitutional and void, in that it violates section 280 of the Constitution of 1901 of the state of Alabama, which said section of the Constitution provides that no person shall hold two offices of profit at one and the same time under this state. By referring to the act of the last Legislature which is now under consideration will be found the following provision: 'Sec. 2. The said court, for the maintenance and exercise of its jurisdiction as conferred by this act shall have all the general powers conferred by law on justices of the peace.

[State, ex rel. Clarke v. Carter.]

The judge of the inferior criminal court of Mobile county shall act as the ex officio judge of said inferior civil court.' " An inferior criminal court for the county of Mobile was created by the act of the Legislature of 1899 (Loc. Acts 1898-99, p. 1164), which provided for the office of a judge of such court. The act in question, the constitutionality of which is raised, was passed by the Legislature at the session of 1911, and established another inferior court—a civil court—for the city of Mobile in lieu of "all justices of the peace therein," authority for the enactment being granted by section 168 of the Constitution of 1901. This act created a separate and distinct inferior court as expressly authorized by the Constitution; but it did not thereby create any additional office, state, county, or municipal. It merely provided, in terms, that other officers—the judge of the inferior criminal court of Mobile county, the clerk of such court, and the sheriff or the coroner of said county —should perform and discharge the duties and functions pertaining to this new court thereby created. It merely conferred new or additional powers and duties upon the officers named.

If the act in question had created separate and distinct officers, as it did a court, and had provided that no one person should hold one of these offices so created, and another office, a very different case would be presented. But the act, instead of creating any new offices to be filled, abolished all those of justices of the peace, and merely required that the duties and functions (which were of a civil nature) theretofore required of such officers should thereafter be required of and discharged by certain other officers named in the act. It was, in effect, a consolidation of courts, rather than a multiplication thereof.

The Constitution does, in effect, inhibit multiplicity of offices, without multiplicity of office holders; that is, it inhibits one person to hold two or more offices of profit and trust under the state government at the same time; but it does not forbid the consolidation of two or more offices, nor does it prohibit the Legislature from imposing additional duties upon, or clothing with added powers, existing officers, nor from withdrawing certain powers and duties from one office and transferring the same to another (with certain limitations or exceptions not necessary to here mention).

The only two cases relied upon or cited by the appellee we have examined, and these we do not consider authority in this case; but, even if they were such, we would not be willing to follow them against the uniform rule and practice (running through the entire history of the state) of legislating additional powers and duties, or of transferring powers and duties theretofore exercised or performed by other officers, upon certain existing officers. For example, probate judges in this state have always been required to discharge other and different duties than those pertaining to the probate office; and since the Penal Code of 1866 probate judges have been both authorized and required by the Legislature as a part of their duties as probate judges to discharge and perform all or part of the duties of the county courts which were created by that Code. Innumerable local acts to the same effect have been passed. Two Constitutions have been since adopted with these code and statutory provisions in force without any express disapproval of these rules of law, or this practice; and we do not think that such statutes and procedure are impliedly prohibited by the Constitution of 1901.

"Where a particular construction has been generally accepted as correct, and especially when this has oc-

curred contemporaneously with the adoption of the
Constitution, or under a Constitution immediately pre-
ceding, and by those who had an opportunity to under-
stand the intention of the Constitution, or a provision
thereof in question it is not to be denied that a strong
presumption exists that the construction righly inter-
prets the intention.—Cooley, Con. Lim. 67. The Su-
preme Court of the United States has frequently con-
sidered this subject. In *Stuart v. Laird,* 1 Cranch, 299
[2 L. Ed. 115], decided in 1803, that court sustained the
authority of its members to sit as circuit judges on the
ground of a practical construction, commencing with
the organization of the government. In the case of *Co-
hens v. Virginia,* 6 Wheat. 264 [5 L. Ed. 257], Chief
Justice Marshall said: 'Great weight has always been
attached, and very rightly attached to contemporane-
ous exposition.' In the case of the *Bank of the U. S. v.
Halsted,* 10 Wheat. 51 [6 L. Ed. 264], Justice Thomp-
son says: 'If any doubt existed whether the act of 1792
vests such power in the courts, or with respect to its
constitutionality, the practical construction given to it
ought to have great weight in determining both ques-
tions.' In the case of *Ogden v. Saunders,* 12 Wheat.
290 [6 L. Ed. 606], Justice Johnson in commenting
upon this subject says: 'Every candid mind will admit
that this is a very different thing from contending that
the frequent repetition of a wrong will create a right.
It proceeds upon the assumption that the contempora-
ries of the Constitution have claims to our deference on
the question of right, because they have had the best
opportunities of informing themselves of the under-
standing of the framers of the Constitution, and of the
sense put upon it by the people when it was adopted by
them.'—See, also, *Marti v. Hunter,* 1 Wheat. 304 [4 L.
Ed. 97]; *Rogers v. Goodwin,* 2 Mass. 475; *State v. May-*

*hew,* 2 Gill (Md.) 487." *Bridges v. Shallcross,* 6 W. Va. 576.

The Louisiana case relied upon by appellee (reported as *Bouanchaud v. D'Herbert,* 21 La. Ann. 138) is distinguishable from this, in that the act there condemned expressly created a new office—one which did not theretofore exist—and required one person to hold two offices. The Texas case reported as *Willis v. Owen,* 43 Tex. 41, is distinguishable from this, in that the opinion therein on its face shows that the constitutional provision there held to be violated was materially different from section 280 of our Constitution, which the act in question is claimed to offend. A very full discussion of kindred questions, if not of the identical one here under consideration, may be found in *Wales v. Belcher,* 3 Pick. (Mass.) 508; *Bridges v. Shallcross,* 6 W. Va. 562-599; *Sharpe v. Robertson,* 46 Va. 518; *People v. Leet,* 13 Ill. 270, and in the case of *State ex rel., etc., v. Burke,* 57 South. 879, of this court, at this time in MS. We think these cases announce the correct rule, and accordingly hold that section 280 of our Constitution is not offended by the act here in question.

The application for a rehearing is overruled. All the Justices concur, save DOWDELL, C. J., not sitting.