# State *v.* Roden.

## Habeas Corpus.

(Decided November 14, 1916. 73 South. 657.)

1. **Justice of the Peace; Abolishing Office.**—Local Acts 1915, p. 436, abolishing justices of the peace in a certain precinct in Dallas county, and establishing in lieu thereof an inferior court, together with certain additional powers, havng the jurisdiction of justics, violates § 168, Constitution 1901.

[State v. Roden.]

2. Statutes; Partial Invalidity; Courts.—To the extent it confers such additional powers, Local Acts 1915, p. 432, abolishing justices of the peace, and establishing inferior courts with the same jurisdiction, and certain additional powers, violates § 168, Constitution 1901, and renders the act entirely void.

(Gardner, J., dissents.)

APPEAL from Selma City Court.

Heard before Hon. J. B. EVANS.

Proceeding by the State of Alabama, against Israel Roden. From an order discharging Roden the state appealed to the Court of Appeals, which certified the question of the constitutionality of Acts 1915, p. 436, to the Supreme Court. Opinion declaring the law unconstitutional certified to the Court of Appeals, which thereupon affirmed Roden's discharge.

W. L. MARTIN, Attorney General, HARWELL G. DAVIS, Assistant Attorney General, and PETTUS, FULLER & LAPSLEY, for appellant. ARTHUR M. PITTS, and REESE & REESE, for appellee.

OPINION OR CERTIFICATE OF COURT OF APPEALS.

BROWN, J.—Section 139 of the Constitution provides that: "The judicial power of the state shall be vested in the Senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the Supreme Court, and to consist of not more than five members, as the Legislature from time to time may establish, and such persons as may be by law invested with powers of a judicial nature; but no court of general jurisdiction, at law or in equity, or both, shall hereafter be established in and for any one county having a population of less than twenty thousand, according to the next preceding federal census, and property assessed for taxation at a less valuation than three million [three] hundred thousand dollars."

Within the limitation placed upon it by this section of the Constitution and section 168, the Legislature may establish such inferior courts, and confer upon them such jurisdiction and power as it may deem expedient.—*State v. Sayre*, 118 Ala. 1, 24 South. 89; *Perkins v. Corbin*, 45 Ala. 118, 6 Am. Rep. 698. Therefore the insistence of appellee that the court created by the act in question (Acts 1915, p. 436) is given jurisdiction in excess

of that authorized by section 168 of the Constitution, and is therefore void, cannot be sustained. If the Legislature had gone no further than to create an inferior court for precinct 36 and in lieu of the justices of the peace of said precinct, and had undertaken to confer jurisdiction in excess of that authorized by section 168 of the Constitution, a different question would be presented.—*Alford v. Hicks,* 142 Ala. 355, 38 South. 752. The declaration found in section 1 of the act, "and which shall be in lieu of all the justices of the peace of said precinct," and the provisions of section 10 of the act attempting to abolish the offices of justice of the peace and constable of precinct 36, if the act was free from another constitutional objection presently to be noticed, could be stricken out of the act, leaving a complete enactment. See *Ex rel. Clarke v. Carter,* 174 Ala. 266, 56 South. 974; *Harper v. State,* 109 Ala. 32, 19 South. 857; *Powell v. State,* 69 Ala. 13.

The insistence that the provisions of the act making the clerk of the circuit court ex officio clerk of the inferior court is a violation of section 280 of the Constitution, inhibiting the holding by the same person of two offices of profit at the same time, is fully answered in *State, ex rel. Vandiver v. Burke,* 175 Ala. 561, 57 South. 870, and *State, ex rel. Clarke v. Carter, supra.*

The notice given in compliance with section 106 of the Constitution is comprehensive enough to authorize the establishment of a court, either within section 139 or section 168, leaving to the Legislature the discretion of working out the details of the enactment, and was sufficient to advise the body of the public interested in the legislation that an act such as was passed would be the result of the proposed effort.—*Christian v. State,* 171 Ala. 52, 54 South. 1001; *Ex parte O'Neal,* 154 Ala. 237, 45 South. 712.

The writer, however, is driven to the conclusion that both the act and its title are duplex, in that both embrace the subjects of establishing a court for Dallas county with jurisdiction superior to that of justices of the peace, and also the subject of abolishing the office of justice of the peace and constable of precinct 36, and establishing a court in lieu of justice of the peace of said precinct.

Section 168 of the Constitution is a limitation on, as well as a grant of authority to, the Legislature to abolish the office of justice of the peace in precincts within, or partly within, cities or incorporated towns with a population of 1,500 inhabitants.

This office cannot be abolished unless a court of the same jurisdiction is created within and for that precinct, with jurisdiction not in excess of that specified in that section.—*Alford v. Hicks, supra.* And the authority to abolish the office of justice of the peace and establish a court in lieu thereof is referable to this section, while the authority to establish a court of larger jurisdiction within the limitation of section 139, supra, is not by specific grant of authority, but is within the power inherent in the Legislature as a co-ordinate branch of the government, not encroached upon by constitutional limitation further than that: "No court of general jurisdiction, at law or in equity, or both, shall hereafter be established in and for any one county having a population of less than twenty thousand according to the next preceding federal census and property assessed for taxation at less valuation than three million three hundred thousand dollars."

The abolishment of the office of justice of the peace is not germane to the subject of establishing a court of superior jurisdiction to that of justice of the peace, and the provision of an act establishing such a court, providing for the abolition of such offices, could not be sustained, no matter how broad and comprehensive the title.—Const. 1901, § 168.

In short, the effect of the two sections of the Constitution adverted to is to make the subject of establishing a court under section 168 in lieu of justice of the peace, and abolishing the office of justice of the peace, a separate and distinct legislative subject to that of creating a court of superior jurisdiction under section 139.

The title and body of the act both embracing the two subjects of legislation makes the act offensive to the provisions of section 45, and the entire act must fall.—*Ballentyne v. Wickersham,* 75 Ala. 533; *Ramagnano v. Crook,* 85 Ala. 229, 3 South. 845; *City of Mobile v. L. & N. R. R. Co.,* 124 Ala. 143, 26 South. 902; *Gandy v. State,* 86 Ala. 20, 5 South. 420.

If only the title was double and the act contained but one subject, that part of the title not germane to the act would be treated as surplusage, and the act upheld; or, if the title was single, containing but one subject, and the act double, that part of the body of the act not germane to the title would be regarded as surplusage, and the act sustained.—*Judson v. City of Bessemer,* 87 Ala. 240, 6 South. 267, 4 L. R. A. 742; *Chattanooga Sav-*

[State v. Roden.]

*ings Bank v. Tanner,* 157 Ala. 502, 47 South. 790; *Hawkins, Tr., v. Roberts & Son, et al.,* 122 Ala. 130, 27 South. 327. But when two subjects are stated in the title and the act contains provisions pertinent and germane to both of those subjects, the act is within the inhibition of the Constitution and the legislative effort abortive.

The question disposed of in *Smith v. Stiles,* 195 Ala. 107, 70 South. 905, is distinguished from the question here by the fact that there is no restriction in the Constitution, as here, that the court created in lieu of the chancery court could have no broader jurisdiction than the chancery court as it then existed. If there had been such restriction, no doubt the result reached in that case would have been entirely different. The establishment of an inferior court in lieu of justice of the peace courts, under section 168 of the Constitution, as construed by the Supreme Court, amounts to but little more than a change of name; while the effect of the legislation sustained in *Smith v. Stiles* was to confer upon the circuit courts of the several counties of the state all the jurisdiction and authority of the chancery courts and courts of like jurisdiction, and abolishing all such courts.

Certified to the Supreme Court under the provisions of the act approved April 18, 1911.

EVANS, J.— (in which PELHAM, P. J., concurs).—I concur in the result reached in this opinion; but for the reason set forth below:

The plain purpose and intent of the Legislature, as is apparent from the title and body of the act in question, was to create for precinct 36, Dallas county, an inferior court which should be in lieu of justices of the peace; the court so created to have the jurisdiction of justices of the peace, with a superadded jurisdiction concurrent with the circuit court.

The act as framed is violative of section 168 of the Constitution in conferring a jurisdiction in excess of that of a justice of the peace.—*Alford v. Hicks,* 142 Ala. 355, 38 South. 752. If the portions of the act in sections 1 and 10 should be stricken, as suggested in the opinion of my Brother BROWN, so as to save the act, the product, as reformed and fabricated by the pruning process, would be an act quite different from that intended by the legislative will. The result, then, would be that we would have both courts, the inferior court and the justice court; the former

[State v. Roden.]

then being authorized under section 139 of the Constitution, and not being, as was intended, a substitute for the justices' courts. Hence we would have a duplication of judicial machinery, where it was only necessary and plainly and expressly intended there be only one; in other words, the reformation of the act would be tantamount to judicial legislation, and that, too, in violation of the legislative will. Speaking of striking invalid portions of an act, Mr. Justice McClellan, in *State, ex rel. Crumpton v. Montgomery Excise Commissioners*, 177 Ala. 212, 241, 59 South. 294, 302, remarks: "It is also to be said, in the nature of limitation of the rule stated, that the whole statute will be stricken if the valid and invalid parts are so connected and interdependent in subject-matter, meaning, and purpose that it cannot be presumed that the Legislature would have passed the one without the other, or where the striking of the invalid would cause results not contemplated or intended by the lawmakers, or where the invalid is the consideration or inducement of the whole act, or where the valid parts are ineffective and unenforceable in themselves, according to the legislative intent."

I do not assent to the view upon which Judge Brown rests his opinion, to wit, duplicity of title. Suppose the act had not been vitiated by the superadded jurisdiction above mentioned, then the abolition of the justice court would have been incidental to and in furtherance of the purpose and design of creating the inferior court in lieu of the justice court; it would not have required one bill to abolish the justice court and another to create the inferior court, or, as denominated by Chief Justice Anderson in *Smith v. Stiles, supra*, 70 South. 905, "piecemeal or patchwork" legislation. The one general subject dealt with was the creation of an inferior court under section 168 of the Constitution in lieu of the justices' court. All things incident to and in furtherance of that general purpose and design were germane and cognate to the general subject-matter, and because the bill was erroneously drawn, rendering it unconstitutional, the incidental matters dealt with were none the less related or germane and cognate; for that is a matter that inheres in the nature of the subjects dealt with.

A comparison of the title and body of the act passed upon in the recent case of *Smith v. Stiles, supra*, and the title and body of the act before us in the instant case will demonstrate that the title to the act under consideration cannot be said to offend

against section 45 of the Constitution, without we also hold that what is said in the *Smith Case* on this proposition is unsound, which would, in effect, be to overrule that case, while this court is required by statute to conform its holdings to those of the Supreme Court. See, also, *Toole's Case*, 170 Ala. 41, 54 South. 195.

As said above, I concur in the result of Judge BROWN'S opinion, and think the act in question should be certified to the Supreme Court as unconstitutional.

OPINION IN RESPONSE TO QUESTION CERTIFIED BY THE COURT OF
APPEALS.

THOMAS, J.—The question of the constitutionality of a statute is by the Court of Appeals certified to the Supreme Court, for determination as by law in such cases made and provided.—Act April 18, 1911, p. 449; *Cardwell v. State*, 1 Ala. App. 10, 11, 56 South. 12. The title of the act in question is: "To create and establish an inferior court for Dallas county, Alabama, in lieu of all justices of the peace in precinct No. 36 in said county, with the same jurisdiction and powers as are now vested in justices of the peace in said precinct, and with concurrent civil jurisdiction with all other justices of the peace in said county. and (1) with jurisdiction concurrent with the circuit court of said county, of all misdemeanors, except violations of the prohibition laws, violations of the laws against carrying concealed weapons and violations of the laws against carrying a pistol; and prescribing the powers and jurisdiction of said court, and the powers and duties of the officers thereof, and providing for the selection, qualification, terms of office and compensation of the officers thereof, and (2) abolishing the office of justice of the peace and constable in said precinct No. 36, and providing for the transfer to said court from the justice of the peace courts in precinct No. 36 of causes within the jurisdiction of such inferior court when established."—Local Acts 1915, p. 436, et seq.

The body of the act, conforming to its title, established "an inferior court in precinct number thirty-six in Dallas county, Alabama, * * * known and designated as the "inferior court of Dallas county,' * * * in lieu of all of the justices of the peace in said precinct," and provided that, "Subject to the limitations herein, the said court shall have all the original jurisdiction and powers both as to civil and criminal cases as is now or hereafter may be vested by law in the circuit court of said county,

[State v. Roden.]

and in the justices of the peace of said precinct 36 of said county;" such provisions being embodied in section 1. By section 2, however, there was ingrafted the exception that said court should "have no jurisdiction of felonies, violations of the law. relating to the carrying of pistols and concealed weapons, and the laws relating to alcoholic liquors, except such jurisdiction as is now or hereafter may be vested in committing magistrates of this state," and by section 3 the further exception that said court should not have jurisdiction "to try any civil cause involving the title to real estate, or in which the amount in controversy, exclusive of interest, costs and attorney's fees claimed, exceeds the sum of one hundred dollars, but subject to this limitation it shall have jurisdiction of all civil causes at law; the venue of which is in said Dallas county." By section 4 of the act, the right to summon grand or petit juries was denied to said court, it being therein provided that all causes, both civil and criminal, should be tried by the judge of said court without a jury, and that the person convicted should have the right of appeal to the circuit court. By section 10 of the act it was provided: "All cases pending in the court of justices of the peace in said precinct shall be forthwith transferred to the court herein established, and said court shall proceed with such cases in all respects as though they had been originally instituted in said court. That there shall be no justice of the peace elected or appointed in said precinct after this act becomes effective, and the offices of justice of the peace and constable in said precinct are hereby abolished."

In section 19 it is provided that all laws affecting or regulating practice and procedure in circuit courts shall be applicable to the inferior court, Dallas county, except as in the act otherwise provided; in section 20, that the judge of said court shall be liable to impeachment for the same causes and in the same manner as provided by law for impeachment of justices of the peace; and by section 25, that: "In the event of the sickness, unavoidable absence, or incompetency of the judge of said court, a special judge shall be appointed during such sickness, absence, or incompetency, in the same manner as provided by law for the appointment of a special judge in the circuit courts, who shall receive as compensation the sum of five dollars per day, to be paid by the county, for each day of such service as special judge."

It is further provided by the act that it shall be the duty of the circuit solicitor, himself or by deputy, to appear on behalf of

the state of Alabama in all criminal cases in said court; that the fees and costs taxable in the circuit courts of this state shall be taxed and collected as now provided by law, in each case in said inferior court, etc.; that the sheriff of said county shall, himself or by deputy, attend said court whenever required by the judge thereof; that the judge of said court should be appointed by the Governor, to serve until the election provided by the act; that said judge shall be deemed a county officer within the meaning of the general election laws, and shall receive compensation as fixed by the act; and that the clerk of the circuit court for said county shall be ex officio clerk of said inferior court, and for services as such inferior court clerk shall receive compensation as fixed by the act.

The act further provides for the issuance and return of executions on judgments rendered in said court, for the collection of costs, etc., and that if any clause, provision, or section of the act should be held invalid, it should not affect any other clause, provision, or section not in and of itself invalid.

The title as well as the body of the act provides for the establishment of an "inferior court, Dallas county," in lieu of the justices of the peace in said precinct, with jurisdiction superior to that of a justice of the peace and concurrent with that of the circuit court of said county of all misdemeanors, except violations of the prohibition laws, of the laws against carrying concealed weapons and carrying a pistol, and also provides for the abolition of the offices of the justice of the peace in precinct No. 36, in Dallas county, Ala., and for the transfer to said inferior court, from said justice of the peace courts, pending "causes within the jurisdiction of such inferior court."

In section 168 of the Constitution, there is a limitation on the authority of the Legislature to abolish the office of justices of the peace of one or more precincts, within, or partly within, a city or incorporated town having more than 1,500 inhabitants; and the authority to provide in lieu thereof an inferior court for such precinct, or precincts, having jurisdiction of all civil cases where the amount in controversy shall not exceed $100, except in cases of libel, slander, assault and battery, and ejectment.

In section 104 of the Constitution it is declared:

"The Legislature shall not pass a special, private, or local law in any of the following cases [enumerating and specifying a number of instances where this veto applies, including subsection 21,

reading as follows] : Increasing the jurisdiction and fees of justices of the peace or the fees of constables."

Chief Justice ANDERSON (*State v. Spurlock*, 159 Ala. 122, 48 South. 849), says: "A justice of the peace is a constitutional officer, and is given by the terms of the Constitution certain civil jurisdiction; but the right to exercise criminal jurisdiction is of statutory creation. This the Legislature can give, and this the Legislature can withdraw when previously given. The present Constitution, like its predecessor, left the power to confer criminal jurisdiction on justices of the peace, but, unlike its predecessors, gives the Legislature a discretion as to justices of the peace, or inferior courts, in lieu of same, in cities and incorporated towns having more than 1,500 inhabitants.—Section 168, Const. 1901. The Legislature, recognizing its constitutional right to do so, has in several instances taken from justices of the peace all criminal jurisdiction, and has since the adoption of the present Constitution established inferior courts in lieu of justices of the peace in certain cities and towns with more than 1,500 inhabitants. Consequently the present Code was compiled, rewritten in part, and adopted at a time when we had what may be termed two separate and distinct classes of justices of the peace; one class with civil jurisdiction only, and the other with both civil and criminal jurisdiction. So, too, is it a matter of judicial knowledge that the acts previous to the present Constitution contained local laws conferring different jurisdiction and fees upon justices of the peace in the various counties of the state, thus in effect destroying all uniformity as to jurisdiction or compensation. Therefore the framers of the present Constitution, recognizing this condition, attempted to obviate such an inharmonious state of affairs by inserting in the Constitution of 1901 subdivision 21 of section 104, prohibiting the increase of the jurisdiction or fees of justices of the peace by any law."

Taking the historical view of this section, it will be noted that section 168 of the Constitution of 1901, conferring upon the Legislature discretion to abolish the office of justice of the peace in certain cities and incorporated towns having more than 1,500 inhabitants, was adopted instead of section 26, art. 6, of the Constitution of 1875, which required the election of not exceeding two justices of the peace in each precinct of every county in the state. The language conferring jurisdiction is identical in both sections (section 168, Const. 1901; section 26, art. 6, Const.

1875), to wit: "Shall have jurisdiction in all civil cases, where the amount in controversy does not exceed $100.00, except in cases of libel, slander, assault, and battery and ejectment."

This limitation of jurisdiction was considered in *Alford v. Hicks*, 142 Ala. 355, 38 South. 752, where Mr. Justice Tyson said: "Whether section 168 is a grant of power to the Legislature to establish the inferior courts mentioned in it is not necessary here to be decided. But it is entirely clear that it is a limitation upon the power of the Legislature to confer upon these courts, when established, jurisdiction in excess of $100, and an act, if passed, conferring jurisdiction for a greater sum, would be unconstitutional."

The view announced in the *Alford Case* is confirmed by a reference to the Journal of the Constitutional Convention of 1901, p. 810. Mr. Smith, as chairman of the judiciary committee, reported as follows: "The article reported makes no change in the office or jurisdiction of justices of the peace, but provides that the Legislature may create inferior courts, with the jurisdiction of a justice of the peace, for any precinct or precincts lying within any incorporated town or city having a population of more than 2,500 inhabitants, to supersede and take the place of all justices of the peace in such precincts, whenever such courts may be deemed by the General Assembly to be wise."

In the debate on this report Mr. Smith said: "So far as the section is concerned, it was molded largely to suit * * * the varying conditions of the several counties and municipalities in the state. As the gentleman will notice, it makes the justice of the peace a constitutional officer in the counties, but not in cities and towns having 2,500 inhabitants or more. In cities and towns having 2,500 inhabitants or more. In cities and towns of that size the Legislature has the right, though it is not made compulsory, to create an inferior court to exercise the jurisdiction that justices of the peace would otherwise exercise in such cities or towns as the Legislature may create these inferior courts, and abolish the office of justice of the peace."

On pages 1131-1138 of this Journal are shown the several proposed amendments to section 29, one of which, offered by Mr. Williams, of Marengo, was to the effect that "the inferior courts herein provided for shall have such jurisdiction as may be conferred on them by law," and a substitute, offered by Mr. Cobb, was to the effect that such inferior courts should have jurisdic-

tion of the justices of the peace, except that in civil cases they should have jurisdiction where the amount involved did not exceed $250. On motion of Mr. Graham, of Montgomery, the proposed amendment and substitute were tabled. An amendment, offered by Mr. Reese, of Dallas, to section 29, to the effect that "the jurisdiction of such courts shall extend over and include all precincts next contiguous thereto," was rejected by the Convention.—Journal, Const. Conv. Ala. 1901, p. 1138. Only one amendment was adopted, that by Judge de Graffenried, making the limit, as to population, of cities and incorporated towns where such inferior courts may be established in lieu of justices of the peace 1,500, instead of 2,500, as first reported by the judiciary committee. In the debate in the Convention, immediately preceding the adoption of section 29 of the report of the judiciary committee (now section 168 of the Constitution), Mr. Williams said, in support of his amendment: "The section, as reported by the committee, provides for the abolition of the courts of justices of the peace and the establishment of an inferior court in the precinct wherever the court of the justice of the peace may be abolished. But it goes further, and limits the jurisdiction in all civil cases in these inferior courts by saying that it shall not exceed $100, and except in cases of libel, slander, assault and battery, and ejectment. My amendment only goes to this extent: That whenever that justice court is abolished, and the inferior court established, the court so established shall have such jurisdiction as may be conferred upon it by law. * * * What is the object of giving to that inferior court only the jurisdiction that the justices of the peace had?"

To the question by Mr. Walker (Madison): "Do you mean under your amendment to leave it so that the Legislature can confer upon such inferior court the jurisdiction of the circuit or chancery court?" Mr. Williams replied: "I think they might have more extended jurisdiction than justices of the peace."

Mr. Cobb, of Macon, said of his substitute: "I am not in favor of creating these courts with the general jurisdiction which this amendment would give them, but I do believe that if we provide for the creation of these courts at all, they ought to have some jurisdiction above that conferred upon a justice of the peace."

Mr. Vaughn, discussing the substitution, declared: "As to the jurisdiction—we need the justice of the peace in the country,

and we need courts of that same jurisdiction in town. * ' * * I think that the jurisdiction ought not to be increased, as provided in some of the other amendments, to $250."

In this debate, speaking of the territorial jurisdiction to be exercised by such inferior courts established in lieu' of justices of the peace, or, rather, of the venue in which that jurisdiction is to be exercised, Mr. McDonald inquired: "Is it the purpose of the majority to allow the Legislature to provide for inferior courts in each precinct of a town such as described in the section?

"Mr. Smith: No sir.

"Mr. McDonald: That is the phraseology; just read it.

"Mr. Smith (Mobile): It is not the purpose, nor is it so expressed, in my opinion."

Upon a vote being taken, the motion to table the minority report prevailed.

Mr. Graham, moving to lay on the table the amendment and the several substitutes therefor, explained the purpose of the judiciary committee in rejecting the amendment as follows: "It should not be the intention of this Convention to create courts without number, conferring upon them jurisdiction entirely out of proportion to their merits. The whole purpose was to establish in cities and towns a court which would take the place of the number of justices of the peace who were carrying on the business of the administration of justice. * * * I move to lay the substitute, the amendment of the gentleman from Macon, and the amendment of the gentleman from Dallas, upon the table."

The rejection by the Constitutional Convention of said several proposed amendments and substitutes, and the adoption of section 168 of the Constitution, was a denial, by the Convention, of the proposition to extend the civil jurisdiction of justices of the peace, or of such inferior courts as might be created in lieu thereof, as to the amount in controversy and as to the subject-matter, theretofore conferred upon and exercised by justices of the peace.

It is further clear that by the adoption of section 168 of the Constitution, the intention of the Convention was that, where one or more precincts lie, within, or partly within, a city or an incorporated town having more than 1,500 inhabitants, the Legislature might provide, in lieu of the justices of the peace of said precinct, or precincts, an inferior court with the same jurisdiction as that

conferred on the justices of the peace whose offices are abolished by the Legislature. That is to say that the section of the Constitution is a limitation upon the power of the Legislature to abolish the office of justices of the peace, as therein indicated, unless an inferior court is crated in lieu thereof, in strict conformity to section 168.

(1) The act now certified by the Court of Appeals for construction (that of September 23, 1915), attempting to abolish the office of justice of the peace in precinct No. 36 in Dallas county, and "to create and establish an inferior court of Dallas county, Ala., in lieu of all justices of the peace in precinct 36 in said county," offends section 168 of the Constitution, in attempting to confer on such inferior court a jurisdiction in excess of that of the justices of the peace whose offices are sought to be abolished. This excess jurisdiction was sought to be made coextensive with that of the circuit court in cases of libel, slander, and assault and battery, jurisdiction of which subject-matters section 168 specifically denies to such inferior courts, and section 143 of the Constitution invests in the circuit court.—*Larkin v. Simmons,* 155 Ala. 273-277, 46 South. 451.

If it be insisted that such inferior court of Dallas county sought to be established by this act was one of general jurisdiction, and a court of law inferior to the Supreme Court, within the provisions of section 139 of the Constitution, it is sufficient to say that the title, as well as the body of the act, shows that such was not the legislative intent in its enactmnet.

We do not mean to hold that there cannot be created inferior courts in cities or incorporated towns having more than 1,500 inhabitants, with jurisdiction in excess of that of justices of the peace, but we do hold that any attempt to dispense with the offices of justice of the peace, except by the creation in lieu thereof of an inferior court in strict compliance with section 168 of the Constitution, is void.

On the question of the separability of unconstitutional portions of an act, Mr. Justice McClellan, in *State, ex rel. Crumpton v. Montgomery, etc.,* 177 Ala. 212, 241, 59 South. 294, 302, pertinently remarked: "An enactment may be valid in part and invalid in part, and the general rule is that, if the valid and invalid parts are independent of each other, separable, and the valid competent to stand without the invalid, leaving an enact-

ment sensible and capable of being executed, the valid parts will survive and the invalid will be stricken.—*Powell v. State,* 69 Ala. 10; *Doe, ex dem. Davis v. Minge,* 56 Ala. 121; *State v. Davis,* 130 Ala. 148, 30 South. 344, 89 Am. St. Rep. 23; 36 Cyc. pp. 976-978. It is also * * * said, in the nature of limitation of the rule stated, that the whole statute will be stricken if the valid and invalid parts are so connected and interdependent in subject-matter, meaning, and purpose that it cannot be presumed that the Legislature would have passed the one without the other, or where the striking of the invalid would cause results not contemplated or intended by the lawmakers, or where that invalid is the consideration or inducement of the whole act, or where the valid parts are ineffective and unenforceable in themselves, according to the legislative intent."

Another leading case on this subject is that of *Vines v. State,* 67 Ala. 73, where Chief Justice BRICKELL declared the rule, when the unconstitutional parts of the statute may or may not be separated from the rest of the act, to be: "A part, or a section, of a statute may offend the Constitution, state or national, and if there are other parts, or sections, separable from, not dependent upon it, capable of full execution without it, their validity is not affected.—*Ex parte Pollard,* 40 Ala. 77. But when the parts of a statute are so materially connected and dependent as to justify the belief that the Legislature intended them as a whole, and there is an absence of good reason for the belief that the Legislature intended, if a part was incapable of taking effect, the residue should be preserved, the whole statute must fail."

(2) We do not think that so much of the act in question as is repugnant to section 168 of the Constitution can be stricken therefrom and the remainder upheld, and it is evident, from an inspection of the title and of the subject-matter of the body of the act, that the Legislature would not have created this inferior court of Dallas county unless it thought and intended that this court was in lieu of the offices of justices of the peace, and that it was the further legislative intent that the offices of justices of the peace in precinct No. 36, Dallas county, were abolished by the same act.

The respective opinions will be certified to the Court of Appeals as answer to the inquiry as to the constitutionality of the act in question.

SAYRE, J., concurs. ANDERSON, C. J., and MCCLELLAN, MAY-FIELD, and SOMERVILLE, JJ., concur in the conclusion. GARDNER, J., dissents.

ANDERSON, C. J.—(concurring.)—In my opinion, the act in question is repugnant to the Constitution. While it attempts to abolish the office of justice of the peace in precinct 36 in Dallas county and to create an inferior court in lieu thereof, it gives the said inferior court jurisdiction, both as to subject-matter and territory, in excess of that authorized by section 168 of the Constitution. Section 168 of the Constitution provides for justices of the peace in each precinct, except those within, or partially within, towns and cities having more than 1,500 inhabitants, in case an inferior court is created in lieu thereof. Therefore, where justices of the peace have been provided in precincts lying within, or partially within, such towns and cities, they can only be abolished by the creation of an inferior court in lieu thereof, ex vi termini, an inferior court with only such jurisdiction as could have been given the justices of the peace, and who must be selected for and by the voters of the precinct, or precincts, of such justices of the peace who have been abolished, and not for the entire county, or by the entire county, or for and by any territory lying outside of the precinct, or precincts, lying within, or partly within, said towns or cities. In other words, the framers of our Constitution intended to provide justices of the peace for each precinct, but to authorize the Legislature, in certain instances, to substitute an inferior court within a certain precinct, or precincts, by creating an inferior court to take the place of all justices of the peace in said precinct, or precincts, with the same power and jurisdiction of the justices of the peace, no more and no less, and that said inferior court judge should be confined in his selection to the territory only of the justice, or justices, whose place he takes. I think this conclusion finds support in the case. of *Alford v. Hicks*, 142 Ala. 355, 38 South. 752, as well as by the debates in the Constitutional Convention as set out in the opinion of THOMAS, J. I do not mean to hold that there can be no inferior court in the entire county, or parts thereof, with jurisdiction in excess of justices of the peace, but I do think that where an effort is made to substitute an inferior court in a certain precinct, or precincts, for the justices of the peace, the same cannot be accomplished except by the creation of such an inferior court as provided by section 168 of the Constitution.

[State v. Roden.]

I am not prepared to take issue with McCLELLAN and SOMER-VILLE, JJ., as to the effect of the notice upon the validity of the act, but to my mind the bill must be considered in order to pronounce the notice bad, and if the bill is bad, it has to go down whether the notice is sufficient or not, and I think it safer to condemn the law upon the body of the act rather than for the notice given as to the intention to pass same. I cannot agree with them, however, in the conclusion that the bad part of the bill can be stricken so as to leave the other a separate, valid, and good law. It strikes me that the paramount purpose of the bill was to get rid of justices of the peace in precinct 36, and that everything else in the act was dependent upon that one contingency. I can never think that the Legislature intended to create this inferior court, except for the purpose of abolishing the justices of the peace in precinct 36.

McCLELLAN, J.—In my opinion, the local act approved September 23, 1915 (Local Acts 1915, pp. 436-440), is void, on the grounds to be stated.

In *Alford v. Hicks*, 142 Ala. 355, 38 South. 752, a decision made 12 years ago, and subsequently pointedly reaffirmed, in the presently pertinent particular, in *Larkin v. Simmons*, 155 Ala. 273, 277, 278, 46 South. 451, decided in 1908, it is held that a local law is unconstitutional and void where the published notice (in an effort to comply with section 106 of the Constitution of 1901) of intention to propose its passage embraces a proposal to incorporate therein a provision which the Legislature cannot constitutionally enact; and so, notwithstanding the bill later actually taking the form of a law, does not contain the provision appearing in the published notice which the lawmakers were restrained by the Constitution from validly enacting. This rule is established; and, if the published notice here in question embraced a material provision, or provisions, which the Legislature was restrained by the Constitution from enacting, then the local law under consideration must be held to be void because of this vitiating defect in the published notice. This local law had for its paramount purpose the establishment of a court to be known and designated as the inferior court of Dallas county. Upon its establishment the further legislative purpose was, among others, to abolish the justice of the peace and justices' courts in precinct 36. It is manifest from a consideration of the terms of section

[State v. Roden.]

168 of the Constitution, in connection with the journal of the Constitutional Convention (see Journal Const. Conv. pp. 810, 1132-1134), as well as the official reports of the debates relative to what became of section 168, that that section restricts the legislative power to abolish justices of the peace to the creation of an inferior court of identical jurisdiction, with respect to subject-matter and territory, possessed by justices of the peace whose offices and courts are thereby alone permitted to be abolished. The published notice gave warning of a purpose to create a court with jurisdiction much greater than that of the justices of the peace the local law proposed to abolish. So, if the notice and the local act are exclusively measured by the provisions of section 168 of the Constitution, they both contain provisions with respect to jurisdiction offensive to that section. It, therefore, in my opinion, results that the notice was defective under the doctrine of the two decisions before cited.

I am disposed to think that, if the published notice had not included the expression of a purpose to move the Legislature to enact provisions offensive to section 168 of the Constitution, the invalid features of the local law could be eliminated, permitting the separable, valid provisions of the act to stand and to be effective.—*State, ex rel. v. Montgomery*, 177 Ala. 212, 240-242, 59 South. 294. It will be noted that in section 26 of the local act it is provided: "That if any clause, provision or section of this act is held invalid, it shall not affect any other clause, provision or section not in and of itself invalid."

The effect of this provision was, as we held in the decision last cited, to exclude from consideration a recourse to the possible inquiry whether the Legislature would have enacted the law without these invalid provisions. In other words, the lawmakers have expressed, through section 26 of the act, the intention that, though invalid provisions are found in the act, they would still have enacted the law as it reads when so purged.—*State, ex rel. v. Montgomery*, 177 Ala. 212, 241, 59 South. 294.

SOMERVILLE, J.—I concur in the foregoing opinion of McCLELLAN, J.

MAYFIELD, J.—I concur in the conclusion, reached by the majority of this court and all the members of the Court of Appeals, that the act in question is void because it violates one or

[State v. Roden.]

more express provisions of our Constitution. I at first thought that I could merely concur in the conclusion; but as there is such a difference of opinion among the Justices, and most all of them have expressed their views, and I am requested by some of the Justices to write to the question, I here give expression to my individual views.

The views of Judge BROWN, of the court of Appeals, come nearer meeting my own than those of either of the other Justices and Judges writing. It is only as to the probable sufficiency of the notice that I disagree with Judge BROWN. I also noncur in the view expressed by Chief Justice ANDERSON, that the attempt to confer territorial jurisdiction on the court in question in excess of the precincts as for which the offices of justices of the peace were abolished rendered the act in question void. I know of no provision of the Constitution which prohibits or inhibits such territorial jurisdiction of such courts in lieu of justices of the peace. An inferior court, created in lieu of justice of the peace courts, must have the same jurisdiction—no more and no less—as that exercised by the justices of the peace whose offices are abolished.—*Alford v. Hicks*, 142 Ala. 355, 38 South. 752.

The justices of the peace whose offices were abolished had jurisdiction throughout the county, civil and criminal. This being true, why cannot this court, created in lieu thereof, have the same jurisdiction? Indeed, must it not necessarily have such jurisdiction, to meet the rule of *Alford v. Hicks, supra?*

The Constitution provides that the jurisdiction of justices of the peace must be uniform throughout the state, county, and precinct; that is, that it must be fixed by general, and not by local, statutes.—Const. § 104, subd. 21. The general statutes on the subject are as follows: As to civil jurisdiction, section 4641 of the Code provides: "Justices of the peace have original jurisdiction within their respective counties, to be exercised as provided by law," etc.

As to criminal jurisdiction, section 6733 of the Code provides: "Justices of the peace have, in their respective counties, concurrently with the county courts, jurisdiction of the following offenses [enumerating them]."

There are, of course, venue statutes which prevent defendants from being sued outside of their precincts, if they desire to avail themselves of the rights conferred thereby; but such statutes do

[State v. Roden.]

not curtail or diminish the jurisdiction of the court, unless plead-
ed judgments against a defendant, outside of his precinct, are as
valid as those against him in his own precinct.    This may be lik-
ened to the jurisdiction of a circuit judge, which is coextensive
with the circuit, but a defendant sued without the county of his
residence may plead the fact in abatement, in most cases, because
of the venue statutes.

Jurisdiction and venue are often thoughtlessly confused; but
of course everybody knows, when his attention is called to it, that
they are very different things.    The terms are never more con-
fused than in relation to the jurisdiction of justices of the peace;
in fact, they are so often confused that it may be said to be com-
mon to speak of their jurisdiction being limited to their respec-
tive precincts.    This is largely due to the fact that the law does
provide that two justices of the peace shall be elected in each
precinct; but, when so elected, both the Constitution and the
statutes contemplate that their jurisdiction is coextensive with
the county.

In my judgment, the most fatal defect, and the most apparent
defect, in the act and bill in question, is well pointed out by Judge
BROWN in his opinion; that is, that the attempted enactment is
duplex both in its title and in its body.    While the opinions of
the other Justices and Judges do not ascribe its invalidity to this
difficulty, the resultant of all the opinions is proof of this infirm-
ity.    Some of the writers are of the opinion that the bill and act
would be valid, as creating a law and equity court, if the Legisla-
ture had not also attempted to create a court in lieu of justice of
the peace courts.    Others are of the opinion that the bill and act
is good, because the provisions touching the law and equity court
can be eliminated as surplusage, leaving a good enactment to
create a court in lieu of justice of the peace courts.    But all agree
that these two courts are separate and distinct entities, and are
incompatible; that is, that one court cannot be created which can
discharge the functions and purposes of both.    All agree—and
this is plain even to the layman—that the Legislature attempted
to amalgamate these two courts into one.    No one can read the
title or the bill without reaching this conclusion.    The Legisla-
ture could without question, by the passage of two bills, have
accomplished what was clearly intended by this one; it could not
possibly draft or pass one bill which could achieve the desired or
intended results.    It is therefore beyond question, to my mind,

[State v. Roden.]

that the body of this bill deals with two distinct and independent subjects and entities—a law and equity court (or county court, as it is often called), and an inferior court in lieu of the justice of the peace courts. This is exactly what section 45 of the Constitution expressly says that the Legislature shall not do. See this section of the Constitution, and some of the hundreds of cases cited in the annotations thereto.

It is very true that the bill was professedly to create but one court; but it is equally true, and equally as plain, that it dealt with two independent subjects, which were wholly incompatible under our Constitution. The clear and unmistakable intent of the Legislature, in the passage of this bill, may be expressed as follows: We desire a law and equity court, with jurisdiction not wholly or fully concurrent with that of the circuit court, chancery court, and our city court of Selma, and also an inferior court in lieu of the justice of the peace courts, in the city of Selma, but, instead of creating two courts, by separate bills, we will accomplish the same result by this one bill, creating one court only, and giving it the combined jurisdiction which the two courts would have separately had. The trouble with the whole matter is that section 45 of the Constitution says: "Each law shall contain but one subject, which shall be clearly expressed in the title."

Here, it must be conceded by all, the proposed law contains two subjects, a law and equity, or county, court, and an inferior court in lieu of justice of the peace courts. Both subjects are equally clearly expressed, both in the title and in the body of the act. Neither of the two subjects can be treated as surplusage; the two, as all agree, are incompatible, and cannot be amalgamated.

Justice THOMAS concurs in what I have heretofore said, as to the act's offending section 45 of the Constitution.

GARDNER, J.— (dissenting).—That it is the solemn duty of this court to uphold rather than strike down the act in question, unless the same plainly transgresses our organic law, is, of course, fully appreciated and so expressed in the majority opinion.

The opinion also fully recognizes the fundamental principle that a statute may be constitutional in one part and unconstitutional in another, and that if the invalid part is severable from the rest, the portion which is constitutional may stand, while that which is unconstitutional is stricken out and rejected.

"It does not matter that the objectionable and valid parts of the statute are in the same section of the act. If they are perfectly distinct and separable, and are not dependent the one on the other, the courts will permit the one part to stand, though the other may be expunged as unconstitutional, provided the effect can thus be given to the legislative intent."—*Powell v. State,* 69 Ala. 10.

"An enactment may be valid in part and invalid in part, and the general rule is that, if the valid and invalid parts are independent of each other, separable, and the valid competent to stand without the invalid, leaving an enactment sensible and capable of being executed, the valid parts will survive and the invalid will be stricken."—*State, ex rel. Crumpton v. Montgomery,* 177 Ala. 212, 59 South. 294.

It is quite clear that the legislative purpose was to establish an inferior court in lieu of the justice of the peace courts for precinct 36 in Dallas county, in all respects as authorized by section 168 of our Constitution. As to this there seems to be no division of opinion. In carrying out this intention the legislative department overstepped the bounds, to some extent, and gave to the court to be established a jurisdiction slightly in excess of that authorized by the above provision of our Constitution. It is quite clear, however, that the intention was to create an inferior court in lieu of the justice of the peace courts of said precinct. This was the real substance of the bill. Conceding, therefore, that the attempt to give the proposed court some slight additional jurisdiction was abortive, and that such excessive jurisdiction must be declared invalid, yet I am unable to see any sound reason why the above-stated rule as to severability of the valid from the invalid portion of the act is not entirely applicable. Clearly this excessive jurisdiction was not at all considered an essential part of the enactment, and may be stricken without in the least affecting the real legislative intent or the real substance of the act, but leaving the enactment entirely sensible and capable of execution.

To my mind, none of the opinions rendered responds to this feature of the case. Justice THOMAS and Chief Justice ANDERSON make reference to the principle of severability, with the conclusion that it cannot be here applied, for the sole reason, it seems, that the legislative intent was clear that the justice of the peace courts in precinct 36, Dallas county, should be abolished, and an inferior court established in lieu thereof. I agree thor-

oughly with the statement that such was clearly the legislative intent and, thus far, am in entire accord with that portion of those opinions. I am unable, however, to see how such conclusion is any reason for striking down the act, being of the view, to the contrary, that it is a strong reason for upholding same. From my viewpoint, it is our duty to uphold the act in this, its principal feature, which would result in our holding the act entirely valid as one abolishing the justice of the peace courts in precinct 36 and establishing, in lieu thereof, this inferior court, with its proper jurisdiction. The invalid portion of the act is that which adds onto its jurisdiction in excess of that permitted under the provisions of section 168 of the Constitution; and it is this excessive jurisdiction only which, in my opinion, it is the duty of this court to strike down as invalid, leaving untouched the clear substance of the act, which abolishes the justice of the peace courts in that precinct and creates an inferior court to take their place.

What is here said in regard to the valid parts of an act being severable from the invalid portion applies, of course, with equal force to the published notice required under our Constitution as to local laws.

In the case of *Alford v. Hicks*, 142 Ala. 355, 38 South. 752, and *Larkin v. Simmons*, 155 Ala. 273, 46 South. 451, the question of severability here discussed was not involved, and of course no reference to this rule is to be found in either of the opinions. These adjudications, therefore, are not applicable to the situation here presented, and cannot be said to militate against the conclusion I have here reached.

I, therefore, entertain the opinion that, under the above-stated principle, it is the duty of this court to strike down the invalid part of the act—that is, the excessive jurisdiction—and leave unaffected the valid part, which establishes this inferior court in lieu of the justice of the peace courts for said precinct, and thus carry out the legislative intent as plainly expressed in the body of the act, which provides that if any clause or provision thereof be declared unconstitutional, the remaining portion of the act shall remain unaffected thereby. Such legislative declaration was accorded some effect in *State, ex rel. Crumpton v. Montgomery, supra,* and is recognized in Justice MCCLELLAN's concurring opinion.

Entertaining, as I do, these views, briefly stated, I cannot concur with the majority of the court, and therefore respectfully dissent.

[Thomas v. The State.]

DECISION BY COURT OF APPEALS IN ACCORDANCE WITH RESPONSE
OF SUPREME COURT.

BROWN, J.—This court, entertaining the opinion that the
act of the Legislature attempting to create and establish an infe-
rior court for Dallas county, approved April 23, 1915, was uncon-
stitutional, certified the question to the Supreme Court, submit-
ting therewith the opinions prepared by the Judges of this court,
and in response thereto the Supreme Court has handed down
opinions concurring with the conclusion announced by this court.

The result is that the order of the circuit judge, discharging
the petitioner, is affirmed.

Affirmed.