# McGehee *v.* The State, *ex rel.* Tate.

### Quo Warranto.

(Decided December 21, 1916. Rehearing denied February 15, 1917. 74 South. 374.)

1. **Statutes; Enactment; Local Acts; Notice; Sufficiency.**—Const. 1901, § 106, provides that no special, private, or local law, except as to liquor traffic, shall be passed unless notice of intention to apply therefor is published, which states the substance of the law, and that a law passed without such notice shall be void. Section 168 provides that where one or more precincts lie within, or partly within, a city or incorporated town having more than 1,500 inhabitants, the Legislature may provide by law for the election of not more than two justices of the peace and one constable, for each of such precincts, or an inferior court for such precinct or precincts, in lieu of all justices of the peace therein. A notice of intention to apply for a local act stated that it would provide for an inferior court in lieu of justices of the peace in certain precincts and in lieu of all other courts created in lieu of justices of the peace in such precincts. Held, that such notice was sufficiently broad and definite to cover notaries exercising ex officio the powers and jurisdiction of justices of the peace.

2. **Statutes; Enactment; Local Acts; Notice; Sufficiency.**—Since such notice did not purport to abolish the office of constable in the precincts named, it was no objection that it did not name the office of constable; for, if his office fell with the justice, the notice of abolition of the justices of the peace was sufficient, and, if it did not fall with the justice, no notice of any sort was required.

[McGehee v. The State, ex rel. Tate.]

**3. Courts; Inferior Courts; Scope of Jurisdiction.**—Loc. Acts 1915, p. 231, creating court in lieu of justices of the peace, extends to such court only the jurisdiction theretofore possessed by justices of the peace.

**4. Statutes; Special Laws; Inferior Courts; Statutes; Extending Jurisdiction.**—Const. 1901, § 104, subd. 21, prohibiting increasing the jurisdiction and fees of justices of the peace, has no application to inferior courts established in lieu of justices of the peace specifically authorized by section 168.

**5. Statutes; Enactment; Floor Amendments; Effect.**—Const. 1901, § 64, providing that no amendment to bills shall be adopted except by a majority of the House wherein the same is offered, nor unless the amendment with the names of those voting for or against the same shall be entered at length on the journal of the House in which the same is adopted, does not prohibit amendments on the floor of the House after an amendment by the judiciary committee upon which the House voted and the names of those voting in favor of the amendment were entered at length.

**6. Judges; Election; Statutes; Validity; Right to Vote.**—Const. 1901, § 168, provides that in each precinct not lying within, or partly within, any city or incorporated town of more than 1,500 inhabitants, there shall be elected by the qualified electors of such precinct not exceeding two justices of the peace and one constable, and that where one or more precincts lie within, or partly within, a city or incorporated town having more than 1,500 inhabitants, the Legislature may provide by law for the election of not more than two justices of the peace and one constable for each of such precincts, or an inferior court for such precinct or precincts, in lieu of all justices of the peace therein. Local Acts 1915, p. 232, § 2, provides that the judges of the inferior court created in lieu of justices of the peace shall be elected by the judges of the courts of record. Held, that the act was a valid exercise of the legislative power, and the electors could not complain that they could not vote for the judges of the inferior court.

**7. Statutes; Partial Invalidity; Effect.**—If a statute contains contradictory language, a part of which would render the act unconstitutional, it is the court's duty to give effect only to that part which would sustain the act.

**8. Courts; Creation; Statutes; Validity; Language Used.**—Loc. Acts 1915, p. 231, providing for inferior court in lieu of justices of the peace in certain precincts, is not invalidated by reason of naming some precincts by number and including others in a general designation, since it cannot be presumed that the Legislature was ignorant of the situation or of the effect of its language.

**9. Justices of the Peace; Justices Ex Officio; Notaries; Right to Office.**—Const. 1901, § 168, providing that the Governor may, except when otherwise provided by an act of the Legislature, appoint not more than one notary public with all of the powers and jurisdiction of a justice of the peace for each precinct in which the election of justices of the peace shall be authorized, does not give such an appointee a constitutional term, and the mere fact that he might not be removed except by impeachment did not prevent the Legislature from abolishing the office.

**10. Courts; Creation; Inferior Courts; Constitutional Provisions.**—In Const. 1901, § 168, providing that where one or more precincts lie within, or partly within, a city or incorporated town having more than 1,500 inhabitants, the Legislature may provide by law for the election of not more than two justices of the peace and one constable for each of such precincts, or an inferior court for such precinct or precincts, in lieu of "all" justices of the

peace therein, the word "all" refers to justices within the territory of the court to be created, and not to justices in all the precincts in the city where the court is established.

**11. Constitutional Law; Judicial Question; Wisdom of Legislation.**—The wisdom of legislation is not a judicial question.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Proceedings by the State on the relation of Joseph R. Tate, . Solicitor, against B. E. McGehee to oust him from the office of Notary Public and Ex-Officio Justice of the Peace. Decree for relator and respondent appeals. Affirmed.

W. M. WOODALL for appellant. BEDDOW & OBERDORFER for appellee.

SAYRE, J.—This is an appeal from the judgment of the circuit court of Jefferson on an information charging that appellant usurped, intruded into, and unlawfully held and exercised the office of notary public and ex officio justice of the peace in and for precinct 9 in Jefferson county. Appellant claimed in the court below, and renews his contention here, that the act establishing an inferior court for certain precincts in Jefferson county, lying within or partly within the city of Birmingham, in lieu of all justices of the peace and all notaries public exercising the powers of justices of the peace in such precincts, approved July 12, 1915 (Local Acts, p. 231, et seq.), was unconstitutional and void on numerously assigned grounds to be here noted and considered as far as need be.

Passing over some mere general assertions in the brief of counsel for appellant, we find the first among the propositions to be considered: That the notice of intention to apply for the passage of the local act in question failed of compliance with section 106 of the Constitution in various respects to-wit: It failed to give notice that the act proposed would abolish the office held at the time by appellant, viz. the office of notary public exercising the powers and jurisdiction of a justice of the peace in and for precinct 9, a precinct lying partly within the incorporated city of Birmingham; it failed to give notice that the act proposed would abolish the office of constable for said precinct 9; said notice failed to show that the court to be created by the act would have jurisdiction of all civil cases

where the amount in controversy did not exceed $100, except in cases of libel, slander, assault and battery, and ejectment, whereas the act does purport to confer such jurisdiction, including, as appellant construes it, jurisdiction of equity causes not involving amounts in excess of $100; the notice was no notice, since it showed a purpose to apply for the passage of an act that would be unconstitutional for the reason that it would contravene subdivision 21 of section 104 of the Constitution, providing that the Legislature shall not pass any local law "increasing the jurisdiction and fees of justices of the peace or the fees of constables."

The court is of opinion that none of the foregoing objections to the act afford sufficient reason for declaring it unconstitutional.

On the general subject indicated by the first three objections noted above, section 106 of the Constitution, we have said that:

"The Constitution does not proceed upon the theory that all the details of every proposed law will be worked out in advance and without the aid of legislative wisdom. It requires only that the local public shall be advised of the substance of the proposed law, of its characteristic and essential provisions, of its most important features."—*Christian v. State*, 171 Ala. 52, 54 South. 1001.

A narrow and literal construction would destroy all power of amendment in the legislative process, so that the Legislature would be required to accept, if at all, every local bill in the exact terms of its proposal. Not being inclined to hamper legislation unnecessarily, this court has held that the Constitution was not intended to interfere with the right of the Legislature to shape up and work out the details of local legislation.—*Ensley v. Cohn*, 149 Ala. 316, 42 South. 827; *State v. Williams*, 143 Ala. 501, 39 South. 276; *State, ex rel. Hanna v. Tunstall*, 145 Ala. 477, 40 South. 135.

(1) The notice of this act was amply broad, and at the same time sufficiently definite, to reach and cover the case of notaries exercising the powers and jurisdiction of justices of the peace. Its language was that an act was to be passed providing for an inferior court "in lieu of justices of the peace in said precincts and in lieu of all other courts created in lieu of justices of the peace in said precincts." The policy and purpose of the Constitution is to permit the Legislature to supersede justices of the

[McGehee v. The State, ex rel. Tate.]

peace in the exercise of a petty jurisdiction and to consolidate such jurisdiction in populous communities where they have sometimes shown a tendency to degenerate into a cause of public inconvenience and detriment. The language of the Constitution, with a knowledge of which all men are charged, is: "Where one or more precincts lie within, or partly within, a city or incorporated town having more than fifteen hundred inhabitants, the Legislature may provide by law for the election of not more than two justices of the peace and one constable, for each of such precincts, or an inferior court for such precinct or precincts, in lieu of all justices of the peace therein."—Section 168.

No one, reading the notice in this case, bearing in mind the true intent and meaning of the constitutional authority, and remembering that the two classes of officers have and exercise the same jurisdiction and the same powers, could have any reason for supposing that the Legislature, while dispensing with justices of the peace strictly so called, would retain justices of the peace ex officio. Hence our conclusion, in keeping with the canon of construction heretofore applied to the constitutional requirement of notice, is that the objections taken to the notice in this case, and noted above, cannot be sustained.

(2) Responding to the objection that no notice was given that the office of constable for precinct 9 would be abolished, it will suffice to say that the act does not purpose to abolish that office. If a constable, claiming to hold his office by virtue of the Constitution and the general laws of the state, is anything more than the executive officer of the court over which the justice of the peace in his precinct presides, and so for some purposes may be held to survive an act which, while abolishing the justice, says nothing of the constable, then the office of constable for precinct 9 in Jefferson county has for such purposes survived the act in question. Further on this point we need not go.

(3) The act clothes the inferior court which it sets up with "all the powers and jurisdiction now conferred or that may hereafter be conferred, both civil and criminal, upon justices of the peace," and specifically provides that:

"Said court shall have jurisdiction in civil cases where the amount involved does not exceed one hundred dollars, except in cases of libel, slander, assault and battery, and ejectment."

Nothing is said concerning equity jurisdiction. Whatever equity powers justices of the peace have, the inferior court has,

no more, no less.  As for this objection, the court is therefore in the strictest sense a court for the precincts within its jurisdiction "in lieu of all justices of the peace therein," as the Constitution provides, and in this respect the act follows the notice comprehensively and accurately.

The constitutional inhibition against "increasing the jurisdiction and fees of justices of the peace" (subdivision 21, § 104) has no application to the "inferior courts" in lieu of justices of the peace authorized by section 168 of that instruction.   We held in the recent case of *State v. Roden,* 15 Ala. App. 385, 73 South. 657, that where an inferior court is set up in lieu of justices of the peace—that is, justices are abolished and their powers and jurisdiction are conferred upon an inferior court—the jurisdiction of the inferior court in respect of subject-matter, like that of the justices of the peace whom it supersedes, may not be extended to cases of libel, slander, assault and battery, or ejectment, nor to any civil case where the amount in· controversy exceeds one hundred dollars; but it was not decided that in every or any other respect the inferior court must be fashioned in the exact pattern of a justice's court.   If it was so intended, no purpose would be served by the alternative of the Constitution which, to state its effect as we understand it, authorizes the consolidation of all the official functions of all the justices of the peace of a number of precincts in an inferior court the civil jurisdiction of which, as to subject-matter, shall not exceed the maximum of that jurisdiction which may be conferred upon justices of the peace.   It is not to be supposed that the framers of the Constitution intended to speak of justices of the peace and the inferior court as one and the same thing, but rather that they provided for their creation as judicial institutions that might be made to differ except in respect of jurisdiction as to the subject-matter of civil causes.   Conforming in this respect to the preliminary publication, the act in question creates an inferior court the judges of which are put upon a salary and its civil jurisdiction confined within constitutional limits.   We find, therefore, no reason for declaring that the publication here shown by the journals of the House and Senate (H. J. vol. 1, p. 479; S. J. vol. 1, p. 1079) brought the act in question within the· influence of the decision in *Alford v. Hicks,* 142 Ala. 355, 38 South. 752, as giving notice of an intention to apply for the passage of an act that would offend against the Constitution in the respect here under consideration.

(5) It is urged in the next place that section 64 of the Constitution, providing that "no amendment to bills shall be adopted except by a majority of the House wherein the same is offered, nor unless the amendment with the names of those voting for or against the same shall be entered at length on the journal of the House in which the same is adopted," was not observed in the passage of this act. This is based upon the journal of the House of Representatives which shows (pages 1354-1360) that the Judiciary Committee reported an amendment which was entered at length on the journal. Two amendments to the committee's amendment were offered and adopted and are set out at length. Then the House voted by yeas and nays upon the committee's amendment as amended, and the names of those voting for the amendment—it appears affirmatively that there were none voting against—are entered at length upon the journal. After this statement of the facts, we need do no more than cite *State, ex rel. Collman v. Pitts,* 160 Ala. 133, 49 South. 441, 686, 135 Am. St. Rep. 79, where a similar contention was decided, and on very clear grounds, to have no merit.

(6) Appellant further contends that the qualified electors residing within the territorial jurisdiction of the inferior court have a constitutional right to vote for the judges of the court, whereas the effort is made to deprive them of this right in section 2 of the act, which provides that the judges of this inferior court shall be elected by—at one place the act provides that the vacancies shall be filled by the appointment of—the judges of the courts of record in Jefferson county, not including the judge of the city court of Bessemer. Pertinent to this contention is this part of section 168 of the Constitution: "In each precinct not lying within, or partly within, any city or incorporated town of more than fifteen hundred inhabitants, there shall be elected by the qualified electors of such precinct not exceeding two justices of the peace, and one constable."

But to continue the quotation, though we have already quoted this part of the section: "Where one or more precincts lie within, or partly within, a city or incorporated town having more than fifteen hundred inhabitants, the Legislature may provide by law for the election of not more than two justices of the peace and one constable for each of such precincts, or an inferior court for such precinct or precincts, in lieu of all justices of the peace therein."

We do not anxiously look about for limitations upon the legislative power of the State in obscure interpretations of the Constitution. The arrangement of the language we have quoted· leads us to conclude that the judges of inferior courts created under the permit of the section need not be elected as justices of the peace must be. The effect of the second alternative provision, as we read it in connection with what precedes it, is to say that the Legislature may provide by law an inferior court in lieu of all justices, thus, as we have heretofore indicated, leaving the constitution and powers of inferior courts created in lieu of justices of the peace to be determined by legislative wisdom, except in respect of their jurisdiction as to the subject-matter in civil cases. *Ex parte Roundtree,* 51 Ala. 42, cited by appellant in this connection, was written under a different Constitution.

(7) Said the Legislature in section 2 of the act: "Each of said judges shall be a resident of the city of Birmingham, Alabama, learned in the law and shall reside within the city of Birmingham, or within said precincts during the term of his office."

Appellant construes this to mean that residents within the territorial jurisdiction of the inferior court, but without the corporate limits of the city of Birmingham, are ineligible to the judgeships created for the court. If necessary to the constitutional validity of the act, we would hold that it makes no such discrimination against appellant and others in like cases with him—within the jurisdiction of the court, but without the city—for, of the contradictory language employed, it would be the duty of the court to give effect to that part which would sustain the act.

(8) We are unable to assign any peculiar significance to the fact that in the title and body of the act, after designating precincts 21, 37, 10, 34, 42, and 46 by numbers, appellant's precinct and two others should have been brought under the jurisdiction of the inferior court by such an expression of general inclusion and definite exclusion as "all other precincts lying within, or partly within the city of Birmingham, Alabama, except precincts 45, 52, and 29." The definite effect of this language is to include the whole of precinct 9, since it lies partly within the city, and it is hard to find in it a snare for legislators who, it seems to be suggested, might have objected had they known, for instance, that by far the larger part of appellant's precinct lay without

[McGehee v. The State, ex rel. Tate.]

the city. It cannot be presumed that the Legislature was ignorant of the situation with which it was dealing or the effect of the language used as applied to that situation.

(9) A provision of section 168 of the Constitution is: "The Governor may, * * * except where otherwise provided by an act of the Legislature, appoint not more than one notary public with all of the powers and jurisdiction of a justice of the peace for each precinct in which the election of justices of the peace shall be authorized."

Appellant held office under this provision. He held an office which was subject to the power of the Legislature. His office was statutory to this extent: Its continuance depended upon the legislative will. Appellant had no constitutional term. The fact that he may not have been removed except by impeachment after trial did not prevent the Legislature from abolishing the office, and with the office went appellant's term. As this court said in *Oldham v. Mayor,* 102 Ala. 357, 14 South. 793, where it was speaking of a statutory office: "Offices are abolished, it may be presumed, without reference to the incumbents or their conduct—though that might, properly, be a consideration—but because they are no longer necessary. Such statutory offices are not to be retained for the benefit of those who fill them, but alone for the public good."

So, we think, this case falls within the analogy of the rule that the Legislature may destroy what it may create.—*Hawkins v. Roberts,* 122 Ala. 130, 27 South. 327. The case for legislative authority is even stronger here, for in this instance the Legislature has express constitutional authority to destroy the office held by appellant, nor is there exception or reservation in favor of the term of the incumbent.

Our conclusion is that the case was correctly decided in the court below.

Affirmed. All the Justices concur; MCCLELLAN, J., concurring in the conclusion only.

ANDERSON, C. J.— (concurring).—As I understand the act in question, it does not contain the vice as to excessive jurisdiction as to civil cases as was embraced in the Dallas county act recently decided in the case of *State v. Roden,* 15 Ala. App. 385, 73 South. 657; but it is perhaps, subject to one of the objections advanced in the opinion of the writer but which were merely

my individual views and was in no sense the opinion of the court. Indeed, an examination of the opinion in the *Roden Case, supra,* will disclose that a majority of the court failed to agree upon any one point or points upon which the act should be condemned. Hence it can hardly be regarded as an authority either in support of or opposed to the present holding. A majority of the court are of the opinion that the act in question is not subject to the attack made upon same, and while my individual views heretofore expressed in the *Roden Case, supra,* are not entirely in line with the present holding, yet a dissent upon my part can serve no good purpose, and I therefore yield to the majority and concur.

McCLELLAN, J.— (concurring).—It appears from the petition that the petitioner (McGehee) is a notary public and ex officio justice of the peace appointed by the Governor in virtue of the authority conferred on the Executive by Code, § 5175. He is of the class of justices of the peace described in these provisions of section 168 of the Constitution of 1901: "The Governor may appoint notaries public without the powers of a justice of the peace, and may, except where otherwise provided by an act of the Legislature, appoint not more than one notary public with all of the powers and jurisdiction of a justice of the peace for each precinct in which the election of justices of the peace shall be authorized."

A reading of the whole of section 168 of the Constitution readily discloses that notaries public ex officio justices of the peace are not of the class of justices of the peace whose offices can only be abolished by the creation of an inferior court within the terms of that section. In short, the office claimed by the petitioner is an office the Legislature may constitutionally abolish without reference to the creation of any substitutionary office or tribunal. Furthermore, the provision of the Constitution relating to the character of office this petitioner claims to occupy is plain to the effect that no notary public ex officio justice of the peace can be appointed in a precinct in which the election of justices of the peace is not authorized.

Hence the existence of the petitioner's office, which was expressly undertaken to be abolished by the local act approved July 12, 1915 (Local Acts 1915, pp. 231-240), must and does depend upon the complete invalidity of that local act, because if the act

[McGehee v. The State, ex rel. Tate.]

is constitutionally invalid in some of its parts and valid in others (including the abolition of petitioner's office), and the invalid may be stricken from the local act without impairing the force and effectiveness of the valid portions thereof, the petitioner must fail.

Of the many grounds of constitutional objection to the local act presented for this petitioner, the only one that, in my opinion, possesses merit, is predicated of those provisions of section 168 of the Constitution by which the Legislature is empowered to establish an inferior court in lieu of justices of the peace in precincts lying within or partly within a city or incorporated town having more than 1,500 inhabitants.

The Judiciary Committee of the Constitutional Convention of 1901, in reporting to the Convention, said this: "The article reported makes no change in the office or jurisdiction of justice of the peace, but provides that the Legislature may create inferior courts, *with the jurisdiction of the justice of the peace,* for any precinct or precincts lying within or partly within any incorporated town or city having a population of more than twenty-five hundred inhabitants, to supersede and take the place of all the justices of the peace in such precincts, whenever such courts may be deemed by the General Assembly to be wise. [Italics supplied.]"—Journal Constitutional Convention 1901, p. 810.

At pages 1131-1138 of this Journal may be found the several proposed amendments to section 29 (now section 168 of the Constitution) of the article reported by the Judiciary Committee. It will be there seen that Mr. Reese, of Dallas county, offered an amendment in the following words: "And the jurisdiction of such superior [inferior] court shall extend over and include all precincts next contiguous thereto."

This amendment was voted down by the Convention. In the excerpts from the official report of the debates reproduced in the opinion of Justice THOMAS in the case of the *State v. Israel Roden,* it appears that the Convention's intention with respect to the jurisdiction of the inferior court provided for in section 168 was in strict accord with the purpose expressed in the above quoted extract from the report of the Judiciary Committee.

In my opinion, the report of the Judiciary Committee, the proceedings of the Convention with respect to the amendment of section 29 of that report, the official report of the debates relating to that section, and the language of section 168, are clear to

[McGehee v. The State, ex rel. Tate.]

the point that the limitation fixed by that section requires that, as a condition precedent to the abolition of justices of the peace through the creation of an·inferior court, the jurisdiction conferred on an inferior court shall be the same jurisdiction as that conferred by law on justices of the peace in this state. Hence, when an act of the Legislature undertakes to abolish justices of the peace through the creation of another court, and in so doing undertakes to confer upon such court jurisdiction beyond that enjoyed by justices of the peace, the enactment would offend section 168 in that particular, and to that extent would be void as measured by the provisions of section 168; the other provisions of the local act being referred to the general power of the Legislature to create a court of the character defined in this act.

As I understand the opinion of Justice THOMAS, in which Justice SAYRE concurred, and the opinions of Justice MAYFIELD and Chief Justice ANDERSON in the case of the *State v. Israel Roden*, their interpretation in this regard of section 168 of the Constitution is that I have undertaken to summarily state.

Sections 9, 12, and 21 of the local act approved July 12, 1915, creating the municipal court of Birmingham, Ala., confer thereon greater jurisdiction than that enjoyed by justices of the peace under the laws of this state. In consequence, it is my opinion that the act under consideration is void to the extent and in the particulars that it undertook to abolish justices of the peace in the precincts mentioned therein. However, since in section 41 of this act it is provided that, "should any section or part of this act be held invalid or unconstitutional, it shall not affect any other part of this act," and since the invalid provisions of the act are separable and may be stricken therefrom without invalidating the whole act (*State, ex rel. v. Montgomery*, 177 Ala. 212, 240-242, 59 South. 294; see, also, opinion of MCCLELLAN and SOMERVILLE, JJ., in *State v. Roden, supra*), the provisions of the local act abolishing the office claimed by petitioner are valid and effective to that end, as well as in the respect it creates additional judges to serve the court thereby created.

· MAYFIELD, J.—(concurring).—I concur in the opinion and decision in this case, but deem it necessary to say that, after a more careful and thorough study of the questions involved, I am of the opinion that subdivision 21 of section 104 of the Constitution does not apply to bills or acts creating inferior courts in lieu

[McGehee v. The State, ex rel. Tate.]

of justices of the peace as authorized by section 168 of the Constitution; that any jurisdiction may be conferred on the court so created, which is not by the Constitution expressly inhibited to justices of the peace; that the jurisdiction conferred on such a court, and the fees and compensation of its officers, are not by the Constitution required to conform with those of all other courts of justices of the peace, or even with those of such courts as are thereby abolished; and that the provisions of the Constitution as to uniformity of jurisdiction and of compensation of justices of the peace do not apply to such courts or their officers; but that the express inhibitions of the Constitution against conferring jurisdiction on justices of the peace are, and should be, the only limitations on the power of the Legislature, as to the jurisdiction to be conferred upon such courts so created.

If anything heretofore written by me or decided by the court, on the subject, is in conflict with what is written and decided in this case, I am of the opinion that it should be hereby expressly overruled.

### ON REHEARING.

PER CURIAM.— (10, 11) On rehearing, for the first time, appellant contends that the exception of three precincts, within, or partly within, the city of Birmingham, from the territorial jurisdiction of the inferior court in lieu of justices of the peace, had the effect of taking the act creating the court without the authority of section 168 of the Constitution. The argument is that such inferior courts must have jurisdiction over all the precincts within or partly within the city or incorporated town where they are established. "Every enactment is presumptively constitutional, and therefore valid, and he who assails it assumes the obligation to demonstrate beyond a reasonable doubt its violation of the fundamental law."—*State, ex rel. v. Greene*, 154 Ala. 249, 46 South. 268.

The court refers the word "all," where it occurs in the phrase "in lieu of all justices of the peace therein," to the justices of the peace within the territory of the court to be created rather than to the justices of the peace in all the precincts within, or partly within, the city or incorporated town where the court is established. The court finds in section 168 of the Constitution no imperative language requiring that all precincts within, or partly

within, the city or incorporated town shall be included within the jurisdiction of any inferior court established in lieu of justices of the peace. The matter was thus, in the opinion of the court, left to be determined by the wisdom of the Legislature. If the Legislature may have acted unwisely in excepting precincts 45, 52, and 29 from the territorial jurisdiction of the inferior court established at Birmingham, that is a matter for the correction of which the court has no authority. All the Justices concur.