**STATE ex rel. GRISWOLD v. LEA.**
**(6 Div. 56.)**

(Supreme Court of Alabama. Dec. 13, 1923. Rehearing Denied Feb. 16, 1924.)

**1. Constitutional law ⊜⇒56—Statute extending jurisdiction of Birmingham municipal court judges held invalid.**

Loc. Acts 1923, p. 112, establishing the Birmingham court of common claims, with ju-

risdiction in civil cases up to $500, and providing that the judges of the municipal court of Birmingham (a court established under Const. 1901, § 168, in lieu of justices of the peace, with jurisdiction in civil cases thereby limited to $100) shall be ex officio judges of the new court, considered as so extending the jurisdiction of the judges of the municipal court as such, violates such section of the Constitution.

**2. Officers ⊜⇒30—Statute relating to Birmingham municipal court judges held invalid as giving them two offices of profit at same time.**

If the new duties, carrying additional compensation, which Loc. Acts 1923, p. 112, establishing the Birmingham court of common claims, and providing that the judges of the municipal court of Birmingham shall be ex officio judges of the new court, imposes on the judges, be referable to them in another capacity than as judges of such municipal court, they would be acting in two capacities, and in effect holding two offices of profit at the same time, in violation of Const. 1901, § 280, which, while excepting justices of the peace, does not except judges of a court established, under Const. 1901, § 168, in lieu of justices, as is such municipal court.

Appeal from Circuit Court, Jefferson County; Richard V. Evans, Judge.

Quo warranto by the State of Alabama, on the relation of D. M. Griswold, against Thomas R. Lea. From a judgment sustaining demurrer to the information or complaint, plaintiff appeals. Reversed and rendered.

Richard H. Fries, of Birmingham, for appellant.

The act is void in providing for the holding of two offices of profit by the same person. Const. 1901, § 280. The attempt to impose additional functions upon the judge of the municipal court of Birmingham, is void. Const. 1901, § 168; State v. Roden, 15 Ala. App. 385, 73 South. 657; Cooley's Const. Lim. § 389; 18 Cyc. 1500; Haley v. Clark, 26 Ala. 439; Hewlett v. Camp, 115 Ala. 502, 22 South. 137.

Beddow & Oberdorfer and Stokley, Scrivner, Dominick & Smith, all of Birmingham, for appellee.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, amicus curiæ.

The imposing of the duties of the ex officio judge of the court of common claims upon the judge of the municipal court does not violate the Constitution. State v. Carter, 174 Ala. 266, 56 South. 974; State v. Burke, 175 Ala. 561, 57 South. 870; Chisholm v. Coleman, 43 Ala. 204, 94 Am. Dec. 677; Herrmann v. Mobile County, 202 Ala. 274, 80 South. 112; State v. Roden, 15 Ala. App. 385, 73 South. 657; State v. Dayre, 118 Ala. 1, 24 South. 89; Ex parte Rountree, 51 Ala. 42.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

THOMAS, J. The citizen's petition (Code, 1907, § 5453; Montgomery v. State ex rel. Enslen, 107 Ala. 372, 18 South. 157; State ex rel. Vandiver v. Burke, Judge, 175 Ala. 561, 57 South. 870; State ex rel. Barrick v. Davidson, 208 Ala. 157, 93 South. 870) is quo warranto, testing the constitutionality of the act of August 29, 1923, "to establish [in the territory indicated] * * * the Birmingham court of common claims." Section 1 of act.

The title of the act is:

"To establish an inferior statutory court to be called the Birmingham court of common claims; to provide for the judges, clerks, and other officers, their appointment, duties and compensation; to provide for the jurisdiction, practice and procedure of said court; to provide for the transfer of causes from said court to the circuit court; and to provide for appeals from said court to the circuit court, and the procedure in the circuit court on appeal or transfer of said causes." Local Acts 1923, p. 112.

It is averred, among other things, that the respondent—

"usurps, intrudes, or unlawfully holds or exercises and draws the salary of a public office of profit * * * as ex officio judge of Birmingham court of common claims, Second division."

This was sufficient general averment of the term of office and usurpation. Jackson v. State ex rel. Tillman, 143 Ala. 145, 42 South. 61; State ex rel. Knox v. Dillard, 196 Ala. 539, 546, 72 South. 56.

The constitutionality of the act is challenged by this proceeding on grounds, among others, (1) that its title and body contain two subjects, contrary to section 45 of the Constitution; and (2) that sections 9 and 10 of the act are repugnant to provisions of section 280 of the Constitution, forbidding the holding, at the same time, of two separate and distinct offices of profit under the state.

Demurrer was sustained to the petition as last amended, and judgment was against petitioner and for costs.

It is provided in section 2 of the act that—

"This court shall have and exercise concurrently with all other courts having like jurisdiction in said county, for and in all of Jefferson county [except territory excluded in section 3 of the act] * * * all the jurisdiction and power which now are, or which hereafter may be by law conferred upon the circuit court * * * in actions at law, where the amount involved does not exceed five hundred dollars."

And section 4 declares that the court shall have no jurisdiction of criminal offenses, of suits in ejectment, or in equity. In section 3 the venue or "jurisdiction" of the court is declared not to extend to or embrace the several precincts enumerated by name and Nos. 1, 2, 3, 4, 5, 7, 24, 27, 33, 35, 40, 41, 49, 51, 53, and 55. In section 5 of the act it is declared that the court shall have authority "to exercise original jurisdiction of all suits and actions at law, including libel, slander, assault and battery, when the matter or sum in controversy does not exceed five hundred dollars." (Italics supplied.)

This is in excess of the powers of a justice of the peace. Const. § 168; State v. Roden, 15 Ala. App. 345, 391, 73 South. 657; Code, 1907, § 4642. And it is provided (section 8) that the court shall "have jurisdiction over cases under the Workmen's Compensation Act when the matter or sum in controversy does not exceed five hundred dollars;" that (section 7) "such judges and courts have authority to grant writs of attachment and garnishment;" and (section 6) said judges are denied the authority to grant writs of certiorari, supersedeas, quo warranto, mandamus, injunctions or ne exeat.

Provision is sought to be made, in section 9 of the act, for two divisions of the court and respective judges thereof—that the "judges of the municipal court of Birmingham shall be ex officio judges of this court," viz.: The judge of the first division of the municipal court shall be ex officio judge of the first division of the court sought to be created by the act, and the judge of the third division of the municipal court shall be ex officio judge of the second division of the Birmingham court of common claims. The compensation of the judge "for his services as such ex officio judge of this court" is fixed at $1,200 per annum (section 10); ex officio clerks and assistant clerks, each at the salary indicated (sections 11, 12, 13); and there is further provision for additional assistant clerks, if "the business of the court justifies," and for the payment thereof (section 13). The conditions for official bonds are prescribed in section 14. In section 15 it is provided that the bailiffs in the first and third divisions of the municipal court shall be bailiffs of the court of common claims, and provision made for the payment of such services.

It is provided in section 16 of the act:

"The constable of precinct 37 of Jefferson county, Alabama, shall be ex officio officer of this court, and shall be required to attend its hearings and may serve any of its processes and writs by himself or his duly appointed deputies in any part of the territory over which this court shall have jurisdiction and shall receive for such services the same fees as provided by law for like services by the sheriff of Jefferson county. The said constable as to any or all writs or processes of this court shall have all the power and authority conferred by law upon sheriffs of Jefferson county."

This is a broader power than that usually conferred upon constables in the several precincts of the county. Code 1907, § 3329; Henry v. Waldrop, Clerk, 206 Ala. 135, 89 South. 371.

Section 17 of the act provides for the con-

duct of business by the two judges; that each judge "may sit and hold court in any other divisions," may "transfer causes" to the other divisions.

Section 21 of the act provides that a judgment of the court shall not be required to be more formal than that rendered by a justice of the peace; and section 22 provides that "fees and costs" that are allowed by law "in the circuit court of Jefferson county" (except library tax) are required to be taxed, collected, and paid into the county treasury as may be required by law.

Time and manner of notice and pleadings, answers of garnishees, the taking and setting aside of judgments by default, are, respectively, prescribed in sections 23, 24, 25, and 31 of the act; and it is declared, of the right of trial by jury, that (section 26) "the plaintiff electing to bring suit in this court shall endorse upon his complaint that he waives a trial by jury, and his election to file his suit in this court shall be deemed as a matter of law as his waiver of his right to have such cause tried by a jury;" and further provision for a trial without a jury (unless demanded, as provided for and required of a party at interest, indicated, "at the time of his appearance" and not later than the return day of the process) is contained in sections 27 and 28.

It is also provided that when a jury trial is demanded as required by the act, after pleadings are settled and an issue of fact to be tried by jury is tendered, the cause shall be transferred "to the circuit court of Jefferson county and the said cause shall there proceed as if said cause had originated in said circuit court" (section 28), and it is made the duty of the presiding judge of the circuit court "to cause such cases so transferred to be promptly set" and tried, and it is provided that liberal "allowance of amendments as to parties, form, or cause of action, or statement of the cause of action, necessary to reach the merits" be indulged or exercised by the trial court (section 29).

In section 30 of the act, the terms of the court are declared to be by the year—from January 1st to the 31st day of December; judgments are made final after ten days, when no new trial or rehearing is duly moved for within that time, pending or duly continued.

Provision is made for the transfer of pending causes to the circuit court "when the business of this [common claims] court" warrants; and the "presiding judge of the circuit court," or the judge acting as such, is given the authority to require "any of the judges of this [common claims] court to sit in the circuit court upon the trial of causes transferred or appealed from this [common claims] court to the circuit court," provided the judge shall not hear "a cause on appeal which said judge tried" in the court of common claims. Section 41.

Other provisions of the act are that witnesses shall receive the same mileage and per diem allowed in the circuit court (section 44); that the sheriff shall execute writs and processes as required of him by the court (section 46); that all parts of laws in conflict with the provisions of the act are repealed (section 47); that if any section or provision is held to be unconstitutional it shall not affect the other sections or provisions of the act (section 48).

It will be noted that, though the court is called, in the title of the act, "an inferior statutory court," it is not an inferior court established under section 168 of the Constitution, "for such precinct or precincts in lieu of all justices of the peace therein." It is its best interpreter—an attempt to establish "an inferior statutory court"— "an inferior court of law which shall be called the Birmingham court of common claims" "for Jefferson county" (except that part "particularly described" and excepted therefrom) "to have and exercise concurrently with all other courts having like jurisdiction" "all the jurisdiction and power *which now are*, or *which hereafter may be by law conferred upon the circuit court of this state, in actions at law*, where the amount involved does not exceed five hundred dollars." (Italics supplied.) Many of its provisions and powers are radical departures from the jurisdiction and powers, venue and procedure, conferred upon and exercised by justices of the peace or by inferior courts authorized to be established "in lieu of all justices of the peace" in the precinct or precincts, and different from the powers, etc., conferred by law upon the municipal court of the city of Birmingham. Local Acts, 1915, p. 231 et seq. The municipal court of Birmingham, composed of three divisions, was created by the Local Act referred to, as an inferior court in lieu of all justices of the peace and, notaries public exercising the powers of justices of, the peace, and of all other inferior courts created in lieu of justices of the peace, etc. Such court, so created, was to have and exercise jurisdiction in the precincts of Jefferson county, Ala., indicated, to wit, Nos. 10, 21, 34, 37, and 46, and in all other precincts lying within or partly within the city of Birmingham, except precincts Nos. 29, 45, and 52. Certain of these precincts, with others, are covered by the act creating the Birmingham court of common claims. The enactment constituting the municipal court of Birmingham was adverted to and upheld in McGehee v. State ex rel. Tate, 199 Ala. 287, 288, 74 South. 374, and Roddam v. Brown, 201 Ala. 109, 77 South. 403.

A comparison of the two acts creating, respectively, the municipal court of Birmingham (Local Acts 1915, p. 231), and the Birmingham court of common claims (Local Acts 1923, p. 112), shows they have a different field of operation, jurisdiction, powers, and

procedure. The one, an inferior court, is in lieu of justices of the peace or courts created in lieu thereof; the latter statute has not for its purpose the creation of such a court. Moreover, the former court has three divisions and judges with an annual salary of $2,400, with power to appoint their respective clerks at an annual salary of $1,200, and its jurisdiction is thus declared:

"That the said court shall have jurisdiction concurrent with all other courts now having jurisdiction thereof of all misdemeanors that are now made by law triable before a justice of the peace, * * * and in addition shall have jurisdiction concurrent with all other courts of the offense of abusive language in the presence of females."

"Said court shall have jurisdiction in civil cases where the amount involved does not exceed one hundred dollars, except in cases of libel, slander, assault and battery, and ejectment." Local Acts 1915, pp. 235, 237, §§ 12, 25.

The provisions for appeal are:

"Right of appeal from judgments in said court shall be the same in both civil and criminal cases as is now provided for appeals in such cases from such judgments of justices of the peace in Jefferson County."

"In all cases, civil and criminal, the law relating to appeals and certioraris in all cases from courts of justices of the peace shall apply to appeals and certioraris from this court."

"In civil causes the law relating to appeal and certiorari of causes from courts of justices of the peace shall apply to appeal and certiorari from this court." Local Acts, 1915, pp. 236, 237, §§ 19, 20, 23.

That is to say, the acts not only have different procedure, jurisdiction, powers, and fields of operation, but also different rules as to taxation of costs, etc. Thornhill v. Cowart, 205 Ala. 455, 88 South. 563.

The case of State v. Roden, 15 Ala. App. 391, 398, 73 South. 657, is adverted to in argument. And it should be said, of that decision, that it was an opinion in response to a question certified by the Court of Appeals as to the constitutionality of the act to create an inferior court in Dallas county, in lieu of all justices of the peace in precinct No. 36; and it was held offensive to the provisions of section 168 of the Constitution, in attempting to confer on such inferior court a jurisdiction in excess of that of justices of the peace, whose offices were sought to be abolished. The excess of jurisdiction and power sought to be conferred was in cases of libel, slander, and assault and battery (subject-matters), jurisdiction of which was denied to such inferior courts by section 168 of the Constitution; the jurisdiction of such subject-matters being invested in circuit courts. Const. § 143; Larkin v. Simmons, 155 Ala. 273, 277, 46 South. 451.

In McGehee v. State ex rel. Tate, 199 Ala. 287, 292, 74 South. 374, 376, the act for consideration was that creating an inferior court in lieu of justices of the peace, etc., and the nature and jurisdiction of such inferior court was adverted to as follows:

"We held in the recent case of State v. Roden, 15 Ala. App. 385, 73 South. 657, that where an inferior court is set up in lieu of justices of the peace—that is, justices are abolished and their powers and jurisdiction are conferred upon an inferior court—the jurisdiction of the inferior court in respect of subject-matter, like that of the justices of the peace whom it supersedes may not be extended to cases of libel, slander, assault and battery, or ejectment, nor to any civil case where the amount in controversy exceeds one hundred dollars; but it was not decided that in every or any other respect the inferior court must be fashioned in the exact pattern of a justice's court. * * * It is not to be supposed that the framers of the Constitution intended to speak of justices of the peace and the inferior court as one and the same thing, but rather that they provided for their creation as judicial institutions that might be made to differ except in respect of jurisdiction as to the subject-matter of civil causes."

That is to say, the questions considered and decided in the Roden and McGehee Cases, supra, were that of the sufficiency of the notice of the proposed local bill, as required by the Constitution, and the limitation of jurisdiction imposed by the Constitution on such inferior courts. The provisions of section 280 of the Constitution were not applied to said respective acts creating said inferior courts.

The provisions of section 280 of the Constitution were considered in State ex rel. Clarke v. Carter, 174 Ala. 266, 56 South. 974, and Herrmann v. Mobile County, 202 Ala. 274, 80 South. 112. There the jurisdiction and compensation of officers or ex officio officers of inferior criminal and civil courts, created in lieu of justices of the peace, were challenged; and it was held, in line with State ex rel. Vandiver v. Burke, Judge, 175 Ala. 561, 57 South. 870, that there was no violation of the Constitution, since the effect was that of a consolidation of courts, rather than a multiplication thereof. Such is not the question presented under the act creating a court (and officials thereof) not in lieu of justices of the peace, etc.

That the instant statute is different in the nature of the court established is patent on inspection. That it is not ruled by the decision in State ex rel. v. Carter, 174 Ala. 266, 277, 56 South. 974, 978, is indicated by the observation that (page 277, supra) the act, instead of creating any new offices—

"to be filled, abolished all those of justices of the peace, and merely required that the duties and functions (which were of a civil nature) theretofore required of such officers should thereafter be required of and discharged by certain other officers named in the act. It was, in effect, a consolidation of courts, rather than a multiplication thereof."

Under like statute and facts the case of Herrmann v. Mobile County, 202 Ala. 274, 80 South. 112, followed the Clarke-Carter Case.

In the instant statute there was no court set up in lieu of justices of the peace or inferior court in lieu thereof, no "consolidation of ,courts," but a multiplication thereof, with different powers, jurisdictions, venue, etc. It is sought to provide that certain officials thereof should be the officials of the municipal court of Birmingham with a different and additional salary per. annum, offending the provisions of section 280 of the Constitution, which is fatal to the enactment.

The provision of section 48 of the act—that any provisions declared "void or unconstitutional" "shall not affect or destroy the validity or constitutionality" of other sections or provisions—cannot save the statute.

In the case of State ex rel. Vandiver v. Burke, Judge, 175 Ala. 561, 572, 57 South. 870, the history of the laws pertaining to judges of probate, of the county court, and of the clerk and presiding officers of courts of county commissioners, was recited. The fact is adverted to that such offices, officials, or ex officio officials thereof are, as it were, in a class recognized by law whose powers are to be exercised by the one individual elected or appointed as the judge of probate, and that the usual fees and compensation provided for such services by the same individual were justified under organic and statutory law. This is stated in the opinion in that case as follows:

"They are not judges of such county courts, though they, as probate judges, are required to discharge the duties thereof. They do not thereby hold two judicial offices—holding only one office, but by law being required to discharge the duties of three courts, the probate, the county, and the commissioners'.

'"Unless otherwise provided by special statute, it now is, and ever since 1866 has been, as obligatory upon a probate judge to perform the duties pertaining to a county court, together with those imposed upon him as a member of the commissioners' court, as it is the duties pertaining to the probate office. He is required to give two separate bonds for the faithful discharge of these duties. The probate judge might be required to give other bonds for the performance of other duties in addition. But the fact that he discharges the duties of two or more courts does not make him hold two offices in violation of the Constitution. There is in such cases a multiplicity of duties and functions, but no multiplicity of offices. If it should be considered that the probate judgeship and the county court judgeship were separate and distinct offices of profit and trust, any one person might be ineligible to hold both at the same time, and ineligible to hold the latter office unless he were learned in the law, because of sections 154 and 280 of the Constitution."

See Const. § 150. State ex rel. Garrett v. Torbert, 200 Ala. 663, 77 South. 37, is to the same effect.

The provisions of section 45 of the Constitution would prevent duplicity in the title and body of the act; and violation, in the enactment of a statute, of this fundamental prohibition, renders the entire act void. Duplicity in legislative enactments was the subject of consideration in Ballentyne v. Wickersham, 75 Ala. 533, 539; State ex rel. City of Birmingham v. Miller, County Treasurer, 158 Ala. 59, 48 South 496; Yahn v. Merritt, Judge, 117 Ala. 485, 23 South. 71; State ex rel. Coxwell v. Mims, Treasurer, 197 Ala. 356, 72 South. 540.

Pertinent observation is made, by counsel in argument, of the duplicity of the title and act—that the part of the title of the act "to establish an inferior statutory court" has no natural connection with or dependence on the other part of the title "and to provide * * * *the procedure in the circuit court* on appeal or transfer of said causes." (Italics supplied.)

"The two clauses of the title are so distinct from, and independent, each of the other, that neither aids the other, contributes to its full accomplishment, or makes up the complement of what would otherwise be incomplete." Ballentyne v. Wickersham, 75 Ala. 533.

The circuit court is a tribunal, separate, distinct, and independent of any inferior statutory court; a court with its own procedure prescribed by law, applicable to all cases that it is called upon to hear, try, and make disposition of. It does not matter how a case gets into the circuit court; the law and rules of court prescribe the procedure for the disposition of that case. Any attempt to provide a procedure in the circuit court different from the procedure already existing therein, involves a change in the existing general law, on a subject that is independent of all other subjects. That is to say, the circuit court and its procedure is in a class by itself. Changing the procedure in the circuit court in a limited class of cases does not aid the subject of establishing an inferior statutory court, or contribute to its full accomplishment, or make up the complement of what would otherwise be incomplete as to such "inferior statutory court."

The inferior court could be established and function without any reference to procedure in the circuit court. The act creating the Birmingham court of common claims would be complete and effective if sections 29, 38, 41, and 43 were stricken from the act. The matters regulated by those sections would not be cognate to the first clause in the title, "to establish an inferior court to be called the Birmingham court of common claims."

We have indicated, as to sections of the act, that its twenty-ninth section attempts to regulate the duty of the presiding judge of the circuit court, that section 38 relates exclusively to the circuit court, and provides that all cases removed to the circuit court

from the Birmingham court of common claims shall be tried without a jury, and that section 41 attempts to confer authority upon the presiding judge of the circuit court to authorize and require the ex officio judge of the court of common claims to sit as a circuit judge pro tempore.

It is provided by section 152 of the Constitution that judges of the circuit court shall be elected by the qualified electors of the circuit for which such courts may be established. This act attempts, in section 41, to authorize the judges of the court of common claims to sit in the circuit court as circuit judges whenever the judge of the circuit court may require it. And the unprecedented provisions of section 43 are that upon appeal from the circuit court of any cause appealed or transferred to the circuit court from the court of common claims, the appellant may file a transcript with a stenographic report of the trial in lieu of a bill of exceptions, and that said transcript shall be treated by the Supreme Court as if it were a bill of exceptions. Thus is the procedure in the circuit court and in this court sought to be regulated in such a manner as cannot be sanctioned by this court under the title and body of the act in question.

These particular clauses have reference only to the second subject in the title of the act, viz. "To provide the procedure in the circuit court on appeal or transfer of said causes." Had this subject been omitted from the title of the act, its first subject, viz. "To establish an inferior statutory court to be called the Birmingham court of common claims," would not afford an intimation of the legislation contained in sections 29, 38, 41, and 43 of the act.

It is not necessary that we multiply authority. We may say that in Norvell v. State ex rel. Brotherton, 143 Ala. 561, 563, 39 South. 357, 358, the notice given was as follows:

"That application will be made to the next Legislature to repeal the act creating the Walker county law and equity court."

And Mr. Justice Dowdell there said:

"The provision contained in section 3, which requires that all civil cases pending on the nonjury docket in said court shall be tried by the judge of the circuit court without a jury, does more than to merely provide for a transfer of the pending business from the abolished court to another court of competent jurisdiction. *It clearly undertakes to change and regulate the practice in the circuit court in reference to the class of cases mentioned.* * * * The provision in section 3 of the repealing act above mentioned brings the case under the influence of the case of Hooten v. Mellon [142 Ala. 245], decided at the present term, wherein a majority of this court held—the writer, however, of this opinion dissenting from the view of the majority—that a similar provision in a repealing act was of *the substance of the law as nominally enacted.* * * *" (Italics supplied.)

Applying the decision in Norvell v. State ex rel. Brotherton, 143 Ala. 561, 564, 39 South. 357, to the provisions of section 38 of the act under consideration, its requirement "that in all causes removed from this court [Birmingham court of common claims] to the circuit court by appeal, the issues and questions of fact *shall be tried by the circuit court* without the *intervention of a jury*" (italics supplied), does much more than provide for the transfer or appeal to the circuit court; it undertakes, by way of providing procedure in the circuit court on "transferred" or "appealed" causes, to regulate and change the practice in that court with reference to the class of transferred or appealed causes. And this subject-matter in the title and the body of the act subjected it to duplicity, contrary to provisions of section 45 of the Constitution. This is aside from the provisions of sections 29, 41, and 43 of the act, contributing to that effect, as we have indicated.

The judgment of the circuit court is reversed, and a judgment here rendered overruling the demurrer to the petition.

Reversed and rendered.

All the Justices concur.

### On Rehearing.

THOMAS, SOMERVILLE, and MILLER, JJ., concur in the opinion and the result.

[1, 2] The Chief Justice, for the majority, concurs in the result as follows:

"ANDERSON, C. J., and SAYRE, GARDNER, and BOULDIN, JJ., concur in the result. While not dissenting as to what is said in the opinion as to the act being repugnant to section 45 of the Constitution, they prefer to not commit themselves to this point, as they feel more assured as to the soundness of the holding on the other point; that is, the respondent being a judge under section 168 of the Constitution in lieu of justices of the peace, the present act extending his jurisdiction to civil cases involving $500 violates said section of the Constitution and cannot be put on him as such judge ex officio, or otherwise. On the other hand, if these new duties, which carry compensation, are referable to the respondent in another capacity and not as judge of the inferior court, then he would be acting in a dual capacity and in effect holding two offices of profit at the same time in violation of section 280 of the Constitution. True, section 280 excepts certain officers, including justices of the peace, but the judge provided under section 168 is not excepted. While the office is in lieu of justices of the peace it is in lieu of several, and carries with it a salary."

The application for rehearing is overruled.